IN THE

# SUPREME COURT OF ILLINOIS.

## NORTHERN GRAND DIVISION.

### SEPTEMBER TERM, 1872.

65   11
65a 686

THE CITY NATIONAL BANK OF OTTAWA *et al.*

*v.*

SAMUEL W. DUDGEON *et al.*

1. CHANCERY—*proof required.* In chancery, before the complainant is entitled to relief, he must make out his case by a fair preponderance of testimony. When the testimony is conflicting, and leaves the matter in doubt, the complainant must fail.

2. SUBROGATION—*surety paying entitled to securities.* Where a debtor had given his note to his creditor signed by another as surety, and had also secured the payment of the same by mortgage upon real estate of the

former, and the surety afterwards paid off the note: *Held*, that in equity the surety was entitled to be subrogated to the mortgage security held by the creditor.

3. A surety upon a note, which was also secured by mortgage upon land of the principal debtor, paid the same, and the creditor, without the assent of the surety, entered satisfaction of the mortgage, so as to leave the same subject to the lien of a judgment held by the creditor against the principal, and proceeded to levy upon the same land: *Held*, that as the mortgage was given for the benefit of the surety as well as for the creditor, the surety was entitled in equity to the benefit of the mortgage security to the extent of his payment; and the land having been sold under a power in a prior mortgage, leaving a surplus, that the surety was entitled to receive such surplus to reimburse himself for what he had so paid.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Messrs. ELDRIDGE & LEWIS, for the appellants.

Mr. J. B. RICE, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

Samuel W. Dudgeon and Bradford T. Mitchell, partners in trade in Ottawa, were indebted to Mead & Co., of New York, in the sum of $3500, and in other sums to other mercantile houses in that city. They were also indebted to the National City Bank of Ottawa on a note for $2000, and a note for $1000. William H. Dudgeon, a brother of Samuel, was security for them on the former note. On the latter there was no security. Besides this indebtedness, Samuel was also indebted to the bank on his private account in a note of $1000, secured by mortgage on a tract of land. This note was also signed by his brother William as surety. William was also indebted to the bank in a note for $500 on his own account.

In December, 1866, the firm of Mitchell & Dudgeon made an assignment for the benefit of their creditors, and made the bank a preferred creditor. Soon after Mead & Co. levied an attachment on the goods, insisting that the assignment was illegal. An arrangement was then made by which Mitchell and Dudgeon confessed judgment on the debt due Mead & Co., and on each of the two bank notes, and executions were at once taken out and levied on the stock of goods belonging to the firm. The complainants below, appellees here, claim that one of the terms of this arrangement was, that the bank would accept the proceeds of the sale in satisfaction of both the judgments in its favor. On the other hand, the bank insists that it agreed only that it would not proceed against William Dudgeon, but did not undertake to satisfy both judgments as against Mitchell and Dudgeon. The goods brought at the sheriff's sale only enough to satisfy the Mead judgment, and the larger judgment, within a few dollars, in favor of the bank. Nothing was applied on the smaller judgment. Soon after the sheriff's sale, William Dudgeon, through his brother John, paid the $1000 note to the bank on which he was security for his brother Samuel, and also paid his own note for $500, although the latter was not due for several months, and the interest had been deducted in advance. These notes having been paid, Samuel called on the bank for a release. It refused to release him from the unpaid judgment, but was willing to execute, and did execute, an agreement not to enforce the larger judgment against William, on which, as already stated, there was a small balance due. Samuel, though dissatisfied with this agreement, took it and preserved it.

After all these transactions the bank levied an execution issued on its unpaid judgment upon the same tract of land on which it had held a mortgage to secure the note given by Samuel and William Dudgeon. After the payment of that note by William it had satisfied the mortgage of record. This bill was then filed by Samuel and William to prevent the sale

of said premises, and to compel the bank to satisfy the unpaid judgment as to Samuel.   The circuit court so decreed.

The evidence in the case is very contradictory as to the precise character of the agreement made by the bank.   There is very positive testimony on behalf of the complainants that the bank agreed to accept its share of the proceeds of the goods in full satisfaction of all the judgments.   On the other hand there is equally positive evidence on the part of the bank that the agreement was, simply, that William Dudgeon should no longer be held responsible.   We are of opinion that the witnesses on both sides swear honestly, and that the opposition in their testimony is due to a difference of understanding as to the extent of the agreement on the part of the bank.

After a careful consideration of all the testimony we have reached the conclusion that the bank did not agree to release Samuel Dudgeon without full payment.   He testifies himself that, at the time when the parties were making these arrangements, he considered himself hopelessly insolvent, and was only solicitous for his brother William, whose name was on his paper as a surety.   The attorneys of Mead, who were in a position to know what arrangements were made, and whose position would not prejudice them as to either party, testify that they understood the bank only agreed not to further harass William Dudgeon.   The attorney who acted for the Dudgeons, and drew the agreement finally executed by the bank officers, testifies that he understood Samuel Dudgeon, who was present, to assent to the agreement.   The record is not clear as to how this agreement came into Samuel's possession, but it seems to have been there when he gave his testimony.   The testimony of the bank officers is very positive, but that we may consider balanced by the evidence of complainants, all of them testifying under a strong bias. Delano and Avery, it is true, concur with the complainants in their testimony, but on the other hand, Gray, who drew the deed of assignment and was attorney for the Dudgeons, agrees

with the attorneys of Mead and with the bank officers. Finally Mitchell himself concurs with them.   Moreover, no sufficient reason is assigned why the bank should have released Samuel Dudgeon from a debt which he honestly owed, and which he had been so anxious to pay that he had given it preference in the assignment.   We must remember that before complainants can have the relief they seek, they must make out their case by a fair preponderance of testimony.   This, in our opinion, they have not done.

There is, however, a ground on which William Dudgeon, after amending the bill, will be entitled to relief so far as relates to the sale of the mortgaged premises.   We have already stated that the individual note of Samuel for $1000, secured by William and also by mortgage on a piece of land belonging to Samuel, was paid off by William soon after the judgments were confessed by the firm.   The note was paid through the agency of John Dudgeon, with the expectation that he would take an assignment of the mortgage, which, however, he did not procure.   But the money with which the payment was made belonged to William, to whom Samuel soon after conveyed the title.   The land was subject to a prior mortgage for about $1800, and it appears by the testimony that it has been since sold by one Hereford under a power contained in said mortgage, and brought at the sale nearly $1000 over the debt secured by said mortgage.   This surplus is held by Hereford awaiting the decision of this suit.

We have no doubt this controversy has grown out of the attempt of the bank to sell this land on its unsatisfied judgment against the firm of Mitchell and Dudgeon, and thereby take from William Dudgeon his only hope of reimbursing himself for the debt paid by him for Samuel to the bank. But for this we presume this litigation would not have arisen, as it is to be inferred from the testimony that Samuel Dudgeon is hopelessly insolvent, and has gone into bankruptcy. In this proceeding the bank was clearly in the wrong.   It was violating the spirit of the agreement which it is admitted

to have made, and also disregarding the rights of William Dudgeon independently of the agreement. It is the right of a surety, when he pays the debt of his principal, to be subrogated to whatever securities the creditor may hold. This is a familiar principle in courts of equity, and has been recognized by this court. *Phares* v. *Barbour*, 49 Ill. 370; *Billings* v. *Sprague*, ib. 509. The bank, however, instead of transferring the mortgage, satisfied it of record, thus letting in the lien of its own judgment, and then proceeded to levy. Although this was not a violation of the letter of its agreement with Samuel and William Dudgeon, it was of its spirit. By that agreement the bank was to look only to the goods of the firm so far as William Dudgeon was concerned. No special reference was had to the smaller judgment, to which William was not a party, but the evident spirit of the agreement was that he should be kept harmless from all these judgments after the goods were sold under execution. The bank has not directly levied upon his property. This it could not do as he was not a party. It has, however, by satisfying the mortgage, and then levying the execution on the mortgaged premises, levied on property which equitably belonged to William, to the extent of the mortgage, after the payment of the debt. The mortgage was a security not only for the benefit of the bank, but for his benefit, and was older than the judgment. Its cancellation was so palpably against the interest of William Dudgeon that we can not but believe, as testified by his brother John, that it was done against his wishes and instructions.

In the view we have taken of this case, William Dudgeon is entitled to have the money awaiting the result of this suit in the hands of Hereford, paid to him so far as he paid the debt to the bank secured by Samuel's mortgage. Samuel Dudgeon, however, is entitled to no relief, and William can not receive it on the bill as it now stands. A supplemental and amended bill must be filed for the purpose of stating more specifically and correctly than in the original bill the facts in

regard to the mortgage, and in order to set up the facts that have since occurred. Hereford will be a proper party to this bill. The original bill states that Samuel Dudgeon himself paid the debt to the bank with money borrowed from John, and gave John a mortgage to secure the money, and that he shortly after conveyed the premises to William in consideration that he had secured the payment of the mortgage to John, and the mortgage on which the premises were finally sold. The parties probably adopted these forms with the idea of making the lien more secure, but we have no doubt as the evidence now stands that the debt was really paid by William as surety, with money of his own or raised upon his credit. The bill was not sworn to by William, and it will promote justice to allow the bill to be amended for the purpose of placing his claim to relief on the only tenable ground. The decree must be reversed, and the cause remanded, with leave to file an amended and supplemental bill, the cost of all testimony heretofore taken being taxable against complainants.

*Decree reversed.*