## GRANDERSON R. PHARES

*v.*

## NORRIS S. BARBOUR.

1. SURETY—*mortgage taken by a creditor from principal debtor as a further security—enures to the benefit of the surety—as well as to the creditor.* The principle is well settled, that where a mortgage is taken by a creditor from the principal debtor, as a further security for his debt, the mortgage so taken must be held in trust, not only for the benefit of such creditor, but for the surety's indemnity.

2. SAME—*creditor becomes a trustee as to the property mortgaged, and must deal with it in good faith.* In such case, the creditor becomes a trustee as to the mortgaged property, and this relation imposes it as an obligation upon him to act in good faith towards his *cestui que trust,* in dealing with the fund, and hold it fairly and impartially, for the benefit of the surety, as well as for himself.

3. Same—*creditor violating his trust—must account for the full value of the property*. And if the creditor parts with the property so mortgaged, without the knowledge, or against the will of the surety, or does any act in violation of the trust, or omits to perform any duty which this relation imposes, whereby the surety is injured, he must be held to account for its full value.

4. Trustee—*cannot become a purchaser at his own sale*. A trustee employed to sell trust property, cannot, either directly or indirectly, become a purchaser at his own sale.

5. Surety—*extension of time to principal—when surety released*. When the payee of a note, gives time or forbearance to the principal debtor, by a promise binding in law, without the knowledge or consent of the surety, the latter is discharged.

6. Evidence—*in what cases—husband or wife cannot be a witness for or against each other*. In an action against the sureties upon a note, the wife of one of the defendants was offered as a witness to testify to what the plaintiff had told her, at the time when he called for her husband to go and see the principal debtor, and get him to execute a mortgage as a further security for the debt. *Held*, that she was incompetent.

7. Same—*construction of act of* 1867. Under the act of February 14th, 1867, neither the husband nor wife can be a witness, for or against each other, except in the particular cases specified in the statute.

Appeal from the Circuit Court of Peoria county; the Hon. Sabin D. Puterbaugh, Judge, presiding.

This was an action in assumpsit, brought by the appellee, Norris S. Barbour, in the court below, against the appellant, Granderson R. Phares, and William Croka and Thomas J. Hoffman, upon a note given by them to appellee to secure a debt of Hoffman's. Appellant and Croka signed as sureties, at the request of appellee. The facts in the case are fully stated in the opinion.

Messrs. Wead & Jack, for the appellant.

Messrs. Johnson & Hopkins, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

It appears, from the record in this case, that on the 30th day of January, 1857, Hoffman, Phares and Croka executed a note to appellee, the first as principal and the other two as sureties, for the sum of three hundred and fourteen dollars, payable on the 1st day of February, 1858. Although the fact that the two latter names to the note are not signed as sureties, still the evidence shows that appellee knew the fact when the note was executed. It also appears that after the note fell due, appellee, by the assistance of the sureties, procured Hoffman to execute a chattel mortgage, which embraced two horses and a two-horse wagon, a set of double harness and a plow, to secure the debt, when the time for its payment was extended until the 1st of January, 1859. Hoffman was to retain possession, by the terms of the mortgage, until that time, unless the property was levied upon, removed, or attempts were made for its sale by Hoffman. On a breach of the conditions of the mortgage, by failing to pay the debt at its maturity or otherwise, appellee was authorized to take the property into possession, and after giving six days' written or printed notice, to sell the same and apply the proceeds to the payment of the note.

There seems to be little if any doubt, from the evidence, that the sureties as well as appellee, understood at the time, that the execution of the mortgage was to release them from their liability as sureties on the note. It seems that when the mortgage was executed, Phares insisted that his name should be taken off the note, but appellee replied that he would never call upon him for payment, and did not hold him for it any longer. There seems to be no dispute that the property was worth as much as four hundred dollars, at the very least, when the mortgage matured. About the time the money became due under the terms of the mortgage, appellee took the property into possession, gave a notice, as he swears, sold it at auction, and it was struck off to one Hutchinson for the sum of thirty-one dollars, which was credited upon the note.

Appellee swears that he did not bid off the property, but he requested Hutchinson to do so, which he did and afterwards turned it over to appellee. The evidence further shows that he turned over one of the horses to Hoffman upon his paying appellee seventy-five dollars. But we are unable to discover, from the evidence, what became of the remainder of the property. Nor does it appear that he gave the sureties any notice of the sale of the mortgaged property.

It also appears that after about eight years had elapsed, and Hoffman had removed to Ohio, appellee brought this suit upon the note, and obtained service upon the sureties alone, Hoffman not being found. They appeared and filed several pleas, among which, one of release and extension of time of payment of the note, without the consent of the sureties. Issues were formed, and a trial was had by the court and a jury, resulting in a verdict in favor of appellee for the amount of the note and interest, after deducting the thirty dollars credited for the sale of the property under the mortgage. A motion for a new trial was entered, but it was overruled by the court and judgment rendered on the verdict; to reverse which Phares prosecutes this appeal, and insists that the verdict is against the evidence, and that the court gave improper instructions for appellee and refused proper ones asked for appellant.

It is a rule of law, firmly established and fully recognized, that a trustee must act in good faith towards the *cestui que trust*, with reference to the trust fund; and if he fails in the discharge of the duty that relation imposes, he will be chargeable with loss or injury sustained by the beneficiary, growing out of his want of reasonable care, or from acts of bad faith. When appellee took possession of the property under the mortgage, he thereby became a trustee, not only for Hoffman but also for the sureties on the note. And occupying that relation, he was bound to use all reasonable efforts for its preservation, and under the provisions of the mortgage, to sell it for the best price that could be obtained. A person thus situated,

who appropriates the trust property contrary to the terms of the mortgage, must be held to account for its full value. He has no right to appropriate it contrary to the terms of the mortgage to his own use, and escape the effect of his violation of his trust by accounting for merely a nominal sum.

It is equally true that a trustee empowered to sell trust property, cannot, either directly or indirectly, become a purchaser at his own sale. The law will not permit men to be thus tempted to act in bad faith, and to commit a fraud upon the *cestui que trust*. And all men seem to know that this cannot be done directly; they seem intuitively to know that it is wrong, and that the law does not sanction such a purpose, and hence, where such an advantage is sought, the trustee almost invariably employs a third person to become the bidder and ostensible purchaser, hoping by that means to conceal the fraud, and thus to reap its fruits. In this case, appellee employed Hutchinson to become the bidder, and the great sacrifice at which this property was sold clearly manifests the wisdom of the rule. Property conceded to be worth fully four hundred dollars was struck off by appellee, to a person bidding for him and from whom he afterwards received it without other cost, at the small sum of thirty-one dollars. Although the evidence does not show all the means that were resorted to for the purpose of producing such a result, we feel justified in the conclusion that it could not have been fair and right.

Having, then, attempted to become the purchaser at his own sale, where he could, and no doubt did, strike off the property at the lowest price he could, with any show of fairness, it would be inequitable, unjust and illegal to permit him, after having obtained the property in that manner, to escape liability to account for no more than the nominal sum at which it was struck off to his own bidder. Having violated the trust reposed in him and appropriated the property to his own use, he should, by every principle of reason.

and justice, be required to account for its full value. Nor would the fact that he may have wasted or destroyed the property relieve him from such a liability.

It is a well established rule in equity jurisprudence, that where a creditor procures further security by the pledge of property, he thereby becomes a trustee as to that property, for the sureties for the payment of the debt. By his taking a mortgage or other pledge it enures to the benefit of the sureties as well as to the creditor. In such a case they have the right to discharge the debt and compel the creditor to transfer the mortgage or pledge to them for their indemnity. Where additional security is taken, it is regarded as an indemnity to both creditor and the sureties; and any waste or misapplication of the pledge operates as a release to the sureties to the extent of the waste or misapplication. Where the creditor receives such a pledge he becomes a trustee for the sureties, and is bound to observe the duties that relation imposes as to the trust property. These equitable and just rules, anciently applicable only to a court of equity, have long been fully recognized and enforced in courts of law. The rule was recognized and applied in the case of *Rogers* v. *Trustees of Schools*, 46 Ill. 428. It then follows, that the sureties in this case became interested in the proper management and application of the mortgaged property to the payment of this note; and when appellee appropriated this property he released the sureties to the extent of the value thus appropriated. Or if he restored it to Hoffman the result would be the same as to them whether he would be left liable for the note or not, as that would depend on other principles. In this view of the case, the fourth and fifth of appellant's instructions should have been given, and the court erred in their refusal.

If a creditor gives time, by a valid and binding agreement capable of being enforced, to the principal debtor, without consent of the sureties, he thereby releases the latter from their obligation to pay the debt. And if such was the fact in

this case appellant would be released; but that is a question which will be passed upon by another jury on the evidence which will then be before them, and hence it is unimportant to discuss the question whether the evidence in this record proves such a discharge of appellant.

It is urged that plaintiff's third instruction was wrong, and should not have been given. That instruction is:

"The court instructs the jury that the mere extending the time for the payment of said note, and the taking of a mortgage upon the goods and chattels of the said Thomas J. Hoffman would not release the securities on said note, unless the same was done without or against the knowledge or consent of said securities, or upon a contract or agreement to release them."

We are unable to perceive any objection to this instruction, as it, we think, conforms to the law. It expressly states that an extension of time to the principal for payment, unless without or against the knowledge or consent of the sureties, would not release them. If they consented to the extension of time for payment they would not be released, but if time was given without or against their consent, then, as we have seen, they would be released, and this instruction fairly presents that question to the jury, and the court did not err in giving it.

It is lastly urged that the court below erred in not permitting the wife of appellant to testify as a witness. At the common law all know she was incompetent to give evidence either for or against her husband. It is, however, urged that the act of 1867, (Gross' Comp. p. 286,) has, in this respect, changed the common law rule. The 1st section of the act declares who may be witnesses, and fixes the limitations under which certain persons may testify. But the 5th section declares that no husband or wife shall, by virtue of that act, be rendered competent to testify for or against each other as

to any past transaction or conversation occurring during marriage or after its dissolution, except in cases where the wife would, if unmarried, be plaintiff or defendant, or the action grows out of a personal wrong to the wife, or the neglect of the husband to furnish the wife with suitable support, and except in cases concerning the wife's separate property. It will be seen from these provisions that the wife is not a witness for or against the husband except in certain specified cases, and it is apparent this is not one of the cases enumerated in the law. Not having been provided for by the statute, she was not competent in this case, and the court did right in refusing to permit her to testify.

But for the errors indicated, the judgment of the court below must be reversed and the cause remanded for further proceeding not inconsistent with this opinion.

*Judgment reversed.*