CHARLES B. WAITE

*v.*

DUDLEY C. DENNISON.

1. CHATTEL MORTGAGE—*omission to state in notice—the year when sale is to be made.* The notice of a chattel mortgage sale read as follows: "Mortgage sale. Catalogue of a valuable law library. To be sold at auction by Wm. A. Butters & Co., on Monday, Nov. 25th, at 10 o'clock, at their sales rooms Nos. 46, 48 & 50 Dearborn street, opposite Tremont House. Terms cash, par funds." Appended to this was a catalogue of books, at the end of which was the name of "Wm. A. Butters & Co." *Held,* that under the circumstances of this case, such notice must be considered sufficient in respect to the time of sale, notwithstanding it omits to state the year in which the sale was to take place. Having been given in the early part of the month of November, all persons seeing it would infer that the sale was to take place on the 25th day of the same month.

2. SAME—*no objection—that other property not named in the mortgage was embraced in the catalogue.* Nor in such case, is it an objection, that the catalogue contained other books, not named in the mortgage, and which belonged to other persons. It worked no injury to the mortgagor, as all of his books which were sold were embraced in the catalogue.

3. SAME—*power must be fairly executed.* The principle regulating sales of this character is, that the power must be strictly pursued, yet it is only necessary that it be fairly executed.

4. MORTGAGOR AND MORTGAGEE—*mortgagee can not become a purchaser at his own sale.* A mortgagee or trustee can not, legally, by himself or agent, become a purchaser at his own sale, for the purpose of barring the mortgagor or debtor's equity of redemption.

5. SAME—*rights of mortgagor—when property purchased by mortgagee at mortgage sale.* And when, in such case, the mortgagee becomes a purchaser at his own sale, either by himself or agent, such sale, to the extent of the purchase so made, is illegal, and as to the property so sold, the mortgagor is not barred of his equity of redemption.

6. SAME—*misapplication of the mortgaged property by mortgagee—effect of.* When a mortgagee, on condition broken, seizes the mortgaged property and misapplies it, or converts it to his own use, without proceeding to comply with the requirements for the foreclosure of the mortgage, he will be held to account for its value.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The facts in this case are fully presented in the opinion of the court.

Mr. CHARLES B. WAITE, *pro se.*

Messrs. HIBBARD, RICH & NOBLE, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, on a promissory note, held by defendant in error, by assignment from John A. Jameson, against plaintiff in error. It was urged in the court below that the note had been satisfied by money paid at different times, the foreclosure of a mortgage on real estate, and the sale of a law library under a chattel mortgage. It is also claimed that the sale of the library was illegal, and that defendant below had a right to set off the value of the law books thus sold, not at what they brought, but at their full value. The note read in evidence was for the sum of $890, upon which there were several payments endorsed. It also appears that plaintiff in error had given to Jameson another note for $189.13, which had also been endorsed to defendant in error. The defendant in error, it appears, had also paid the taxes, amounting in all to $71.78, on the mortgaged lands. These notes were given the 1st of November, 1860, and bore 10 per cent. interest.

There were endorsed on the larger note, at different times, payments amounting to the sum of $736.41. If interest be computed on this note, as credited, to the time the judgment was rendered, it appears there was due thereon $658.07. The evidence shows that the law books were sold for $404.85, and the auctioneers' fees and costs of printing, amounting to $44.50, was deducted from that sum, and the balance applied upon the two notes—on the smaller note the sum of $166.04, which discharged it, and the balance was applied on the note upon which suit was brought.

But plaintiff in error insists that the notice and sale were not in conformity with the requirements of the mortgage; that the notice is insufficient in several particulars. The notice given was this:

## "MORTGAGE SALE.

### "CATALOGUE OF A VALUABLE LAW LIBRARY.

"To be sold at auction, by Wm. A. Butters & Co., on Monday, Nov. 25th, at 10 o'clock, at their sale rooms, No. 46, 48 & 50 Dearborn street, opposite Tremont House. Terms, cash, par funds."

There followed this notice a catalogue of the books, and the name of Wm. A. Butters & Co., appeared at the end of the catalogue. The notices seem to have been printed, posted up more than ten days before the sale, and three or four hundred were distributed in the city and circulated in the country. They seem to have been printed on the 4th and 5th of November, 1861, and the sale was made by Butters & Co. on the 25th day of the same month. The mortgage provided that if the mortgagor should sell or assign, or attempt to sell or assign the books, or any part of the same, or should fail to keep them insured, or if they should be seized under any writ, or he should fail to pay the notes and interest at maturity, then the party of the second part, by himself, his agents, attorneys or assigns, might seize and sell the goods at public auction to the

21—51ST ILLS.

highest bidder, after giving ten days notice of the time, place and terms of sale, with a description of the property, by publication in a newspaper, or posting notices in three public places, or that he might sell the same at private sale.

It is urged, that the notice was insufficient, because it does not disclose in what year it was given. In this, we think there was no objection, under the circumstances of this case. The notice having been given in the early part of the month, all persons seeing it would readily infer that the sale was to take place on the 25th of that month. *Finch* v. *Sink*, 46 Ill. 169.

It is urged, that the list should not have contained a catalogue of other books than those embraced in the mortgage. There was no objection to this, as the printed notice contained a description of all the books of plaintiff in error, which were sold. And the list in the notice was signed by Butters & Co., and the jury have found, under a proper instruction, that they were the agents of defendant in error, and if so, that was sufficient under the power contained in the mortgage. Whilst the power must be strictly pursued, it is only necessary that it be fairly executed. The mortgage authorized the mortgagee, his agent, attorney or assigns, to execute the power; and when this sale was advertised and made by an agent, it was in strict pursuance of the power.

It is, however, true, that a mortgagee or trustee has no legal right to become a purchaser at a sale he is conducting by himself or agent, for the purpose of barring the mortgagor's or debtor's equity of redemption. *Phares* v. *Barbour*, 49 Ill. 370. In this case, Butters & Co. were the agents of defendant in error, and were acting in his stead and under his control, and he had no more right to become a purchaser at that sale than if he had been acting as the auctioneer in person. This is but the application of the familiar rule, that an officer, trustee, or agent, can not purchase at his own sale.

As, then, Butters & Co. were the agents of defendant in error, and he became a purchaser of a large portion of the

books by Jameson, who acted for him, and for which plaintiff in error was allowed but $191.12 as a credit on the note, being the price of the books struck off to him, the sale, to that extent, was illegal, and if the books were of greater value, the credit should have been increased to the true value of such books; and this the court instructed the jury to do. As to those books, plaintiff in error was not barred of his equity of redemption, and inasmuch as defendant in error has appropriated them to his own use, he must be held to account for their value. If, after seizing the property described in the mortgage, on condition broken, the mortgagee misapplies it, or converts it to his own use, without proceeding to comply with requirements for its foreclosure, he must account for its value. Did the jury, then, make a sufficient deduction from the note to cover any loss that accrued by the purchase of these books by defendant in error? If we take the note, with its credits as endorsed, and compute the interest, we find a balance of about $658, at the time of the trial. But we see the jury found a verdict for only the sum of $351.77, thus showing that they had allowed something more than $300 over and above the auction prices of the books. It thus appears that plaintiff received over $700 in gross for his library, and about $670 as the net proceeds.

It is, however, urged, that even with that deduction from the note, the verdict was too large. When it is remembered that the evidence shows that all of the books described in the mortgage were not obtained, and that there was $71.78 paid as taxes by defendant in error, on the mortgaged premises, we are not prepared to hold that the jury have failed to give all proper credits. They had proper instructions from the court, and have found the amount, and we think the evidence warranted the finding.

The judgment of the court below must be affirmed.

*Judgment affirmed.*