RUSSELL HINCKLEY
v.
THOMAS J. CHENEY.

*Chattel Mortgages—Hotel Furniture—Breach of Condition—Conversion
by Mortgagee—Set-off—Instructions.*

1. Upon seizure of property under chattel mortgage for condition
broken, the same must be disposed of in accordance with the terms of the
mortgage.

2. This court will not consider an alleged erroneous ruling of the trial
court upon objections first made on appeal.

3. In an action upon promissory notes, one of which was secured by
chattel mortgage on hotel furniture taken possession of by the mortgagee
for condition broken, this court holds that the retention thereof for an un-
reasonable time by the mortgagee and his assignee rendered said mortgagee
liable in the value thereof to the mortgagor, notwithstanding his permission
that the same might be used by the tenant of the assignee when in charge
of the hotel, upon his request, and that said property was a sufficient set-off
as against the amount claimed to be due on said notes.

[Opinion filed August 28, 1889.]

IN ERROR to the Circuit Court of St. Clair County; the
Hon. WILLIAM H. SNYDER, Judge, presiding.

Messrs. KOERNER & HORNER, for plaintiff in error.

Mr. WILLIAM WINKELMAN, for defendant in error.

PHILLIPS, J.   The plaintiff brought his action of assumpsit
against defendant on two promissory notes, one of date
February 23, 1884, for $2,000, due one year from date, the
other of date February 23, 1885, due one day after date, for
the sum of $160 each, with interest from date at the rate of
eight per cent. per annum.

The defendant pleaded specially, that at the time of the
execution and delivery of the $2,000 note sued on, the defend-
ant was the owner of personal property of the value of $3,000,

on which he executed a chattel mortgage to the plaintiff to secure the note; that subsequently the plaintiff made a deed of assignment of all his estate, under and by which deed of assignment the assignee took possession of plaintiff's estate, and while so in possession of the note and mortgage, took possession of the mortgaged property; that subsequently, the plaintiff having compromised with his creditors, and the assignee having returned to him all the estate in his hands, plaintiff advertised the property so mortgaged for sale, and through his attorneys, bid in the same, and the value thereof was at least $3,000, and offering to set off that sum.

The evidence shows that the plaintiff was in possession of property to the value of about $3,000, a part of which was not included in the mortgage, and in February, 1886, turned over all the property, which comprised the furniture of a hotel, to the assignee of plaintiff. At that time the indebtedness amounted to about $2,320. On January 27, 1887, the property was sold for $443.50, and the same was bid off by G. A. Koerner.

The assignee testifies that the defendant stated to him that he desired to give up the Hinckley House and get out, "and told me that Mr. Hinckley held a chattel mortgage on the hotel, goods and furniture, and he desired me to take care of it for the chattel mortgage.

"He wanted me to take possession and I did so, to dispose of it at any time. I did not deem it advisable to sell the personal property until the house itself was sold. Some time after that, a party desired to rent the hotel. Mr. Cheney, the defendant, consented to the property being used by the incoming tenant; but before it came to a sale, Mr. Hinckley made arrangements to control the property himself."

While there is nothing in this record to show the date at which the property was returned to Hinckley, yet it does appear, that from February, 1886, to January 27, 1887, the assignee or Hinckley had control of this property, and at the time the property was turned over, held the notes and chattel mortgage. After thus receiving the property it was the duty of the assignee and of the mortgagee to proceed to the dis-

posal of it in accordance with the provisions of the mortgage. It was held in Waite v. Dennison, 51 Ill. 319, "If, after seizing the property described in the mortgage on condition broken, the mortgagee misapplies it, or converts it to his own use, without proceeding to comply with requirements for its foreclosure, he must account for its value."

And the fact that Cheney consented to the use of. it by the tenant of the assignee, at the request of the assignee, under the circumstances as testified to, would not relieve Hinckley from liability for the value of the property, the sale of which was thus unreasonably delayed, and used an unreasonable time. The only testimony in the record as to the value of the property is that of the defendant, who testified that he considered the property to be worth about $2,500 when he turned it over, and Peter Joffray, who testified that he was the auctioneer who sold the property; that the mortgage was handed him by Mr. Koerner; that there was competition at the sale; that the property was sold to Mr. Koerner, and in his estimation the property sold at a reasonable value; and Mr. Koerner, who states that he bid the property off for $443.50; that he "attended the sale of the property at the Hinckley House for some gentlemen who had taken the notes as security for a debt that Mr. Hinckley owed them; and I recollect that I paid a pretty fair price for the furniture. I am not an expert in the judgment of values but there were more experts there that bid; but I got the goods."

Under this evidence the jury found that Hinckley was liable for the value of the property and found the value of the property as a sufficient set-off to the amount of the notes, finding for the defendant. With this conflict as to the value of the property we are not disposed to question the correctness of that finding.

There was sufficient evidence to authorize the verdict. The motion for a new trial, as made in the Circuit Court, assigns the following reasons:

1st. "That the court admitted at the trial improper evidence on the part of the defendant."

2d. "That the court permitted an instruction on the part

.of the defendant to go to the jury without the same being
submitted to the opposing counsel according to the rules of
the court."

3d. "That the court permitted written evidence intro-
duced on the part of the defendant to be handed to the jury
and by them to be carried to the jury room."

4th. "That the verdict is contrary to the law and evi-
dence in the case."

The remaining error assigned here is, the court erred in
giving defendant's instruction. The giving of that instruction
is only objected to in the motion for new trial, on the ground
that it was not submitted to opposing counsel in accordance
with the rules of court. The existence of such a rule is in no
manner shown by this record, and as to the giving of that
instruction it must, on the authority of O. O. & F. R. R.
Co. v. McMath, 91 Ill. 111, be held that it can not be urged
here for the first time, except on the ground of its not being
submitted to opposing counsel, as that was the only objection
taken in the Circuit Court.

No error appearing which will authorize a reversal the
judgment is affirmed.

                                    *Judgment affirmed.*