## Charles E. Frankenthal et al. v. Levy Meyer et al.

1. Chattel Mortgages—*Rights of the Parties After Possession Taken.*—After default and possession taken by a mortgagee of personal property, the legal title is vested in him and he can maintain an action at law for a seizure or an injury done to such property. But the mortgagor retains an interest in the goods until divested thereof by sale under the provisions of the mortgage, or by lapse of time his right of redemption is lost.

2. Same—*Rights of the Parties at Common Law.*—By the old common law, a mortgage of personal property gave an absolute title to the mortgagee on breach of condition. No process of foreclosure was necessary, and there was no right of redemption.

3. Mortgages of Real Property—*Legal Estates Vested in Mortgagee.*—In respect to mortgages of real property at common law, the legal estate vested in the mortgagee and was forfeited upon default; equity established the right of redemption after default.

4. Same—*At Law and in Equity—Injury to Reversion.*—A mortgage of land is one thing at law and another in equity; at law it is an estate, in equity it is but a security. Notwithstanding this, a mortgagor of lands may maintain an action at law for an injury to his reversion.

5. Mortgages — *Mere Securities.*—The law courts now recognize mortgages of all kinds as mere securities. The title may be differently regarded and treated in different forums, but until foreclosure the mort-

gagor has an interest in the property which is recognized at law as well as in equity.

6. SAME—*The Modern Doctrine.*—While courts frequently speak of the title of the mortgagee being absolute after default, it is not to be understood that the ownership is absolute. Nowhere is it now held that upon forfeiture the mortgagee may dispose of the property without reference to the interests of the mortgagor.

7. REVERSION—*Injury to the, etc.*—The action of case is a proper proceeding for an injury to property when the interest in it is in reversion.

8. REVERSION—*In a Descriptive Sense and Otherwise.*—The term reversion is often used in such a sense that it is descriptive, only, of an interest in land. It is also used when speaking of the right to a return of such personal property as does not perish with a short term of "using," the possession of which property the general owner has temporarily parted with.

9. MORTGAGOR OF CHATTELS—*Rights Extinguished upon Default and Possession Taken.*—A mortgagor of chattels has, after default and possession taken by the mortgagee, no legal estate in the mortgaged property; his interest is equitable only. The property can not be taken upon execution against him.

10. SAME—*No Rights at Law after Default.*—Having, after default and possession taken by the mortgagee, no legal estate in or legal claim to the mortgaged property, his relation to the same being that of a *cestui que trust*, it would seem that a mortgagor can not maintain at law an action based upon his equitable interest.

11. SAME—A *cestui que trust*, or other person having only an equitable interest, can not, in general, bring an action in the courts of common law against his trustee, or even a third person, unless in cases where the action is against a mere wrongdoer, and for an injury to the actual possession of the *cestui que trust*.

12. The mortgagee of personal property has a right of action against persons who unlawfully invade his possessions, and in such action he can recover not only the damage he has suffered, but also the damage done to the mortgagor.

**Memorandum.**– Action in case. In the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Declaration in case; judgment on demurrer; error by plaintiff. Heard in this court at the; March term, 1894, and affirmed.* Opinion filed December 6, 1894.

## STATEMENT OF THE CASE.

The judgment sought to be reviewed upon error in this case was rendered upon demurrer to the following declaration:

---

* This case was, upon the hearing, reversed, and is so reported in Vol. 54 Ill. App. 160. Afterward, upon rehearing, it was affirmed.

" Charles E. Frankenthal, Joseph Freudenthal and Henry Adler, plaintiffs in this suit, complain of Levy Mayer, Isaac H. Mayer, Adolph Kraus, Albert Myres and Sigmon Frank, defendants, summoned, etc., of a plea of trespass on the case.

For that, whereas, said plaintiffs heretofore, to wit, on October 21, 1893, in said county, were the owners of certain goods, wares and merchandise, consisting of a large stock of gentlemen's furnishing goods and similar articles, and also divers counters, shelves, safes, furniture and store fixtures, all of the value of, to wit, one hundred and fifty thousand dollars ($150,000), and also the leasehold of the store and premises known as numbers 240 and 242 Monroe street, in the city of Chicago, in said county, upon which said goods and chattels and said leasehold said plaintiffs had, on the day aforesaid, there executed and delivered to one Emanuel Frankenthal a chattel mortgage to secure an indebtedness then there owing him by them amounting to one hundred and eleven thousand three hundred eighty-two and ninety-seven one-hundredths dollars; and said Emanuel Frankenthal had then there taken possession of said property under said mortgage, and of the premises wherein the same was situated, and was holding the same for sale and preparing to sell the same under said mortgage for the purpose of applying the proceeds derived from such sale to the payment of the indebtedness due him from said plaintiffs which was secured by said mortgage.

And thereupon, and after the execution of said mortgage, and while said Emanuel Frankenthal was in possession of said property thereunder as aforesaid, said defendants, contriving and intending to injure said plaintiffs in that behalf, on October 25, 1893, and on divers days thereafter, to wit, up to and including the 21st day of November, 1893, in the county aforesaid, wrongfully broke and entered said premises, with a great mob of people, and there seized upon said goods and took violent possession thereof and of said premises and excluded said Emanuel Frankenthal and these plaintiffs therefrom, scattered said goods about, and

greatly marred, spoiled and injured the same, and also hindered and prevented the sale thereof under said mortgage for a long space of time, to wit, until the 21st day of November, 1893, and also broke open the safe of said plaintiffs and seized and destroyed their private books and papers, and other wrongs to said plaintiffs then and there did, to their great damage.

And said plaintiffs further aver that said stock of merchandise consisted principally of goods designed and purchased by said plaintiffs for sale during the fall of the year and which are usually sold during that season, to wit, during October and November, and for which goods there is no ready market nor can advantageous sales thereof be made except during those months; and that by reason of the wrongful acts of said defendants and their agents as aforesaid, the sale of said goods was hindered and prevented during the time at which an advantageous sale thereof could be made, to wit, to November 21, 1893; whereby said goods were greatly injured, depreciated in value, and great loss and damage resulted to said plaintiffs, to wit, twenty-five thousand dollars ($25,000). And also for that, whereas, said plaintiffs heretofore, to wit, on October 21, 1893, in said county, were the owners of certain goods, wares and merchandise, consisting of a large stock of gentlemen's furnishing goods and similar articles, and also divers counters, shelves, safes, furniture and store fixtures all of the value of, to wit, one hundred and fifty thousand dollars ($150,000), and also the leasehold of the store and premises known as numbers 240 and 242 Monroe street, in the city of Chicago, in said county, upon which said goods and chattels and said leasehold said plaintiffs had on the day aforesaid there executed and delivered to one Emanuel Frankenthal a chattel mortgage to secure an indebtedness then there owing him by them, amounting to one hundred and eleven thousand three hundred and eighty-two and ninety-seven one hundredths dollars, and said Emanuel Frankenthal had then there taken possession of said property under said mortgage, and of the premises wherein the same was situated, and was holding

the same for sale, and preparing to sell the same under said mortgage for the purpose of applying the proceeds derived from such sale to the payment of the indebtedness due him from said plaintiffs, which was secured by said mortgage.

And thereupon, and after the execution of said mortgage, and while said Emanuel Frankenthal was in possession of said property thereunder as aforesaid, said defendants, contriving and intending to injure said plaintiffs in that behalf on November 2, 1893, and on divers days thereafter, to wit, up to and including the 21st day of November, 1893, in the county aforesaid, wrongfully broke and entered said premises, with a great mob of people, and there seized upon said goods, and took violent possession thereof and of said premises, and excluded said Emanuel Frankenthal and these plaintiffs therefrom, scattered said goods about, and greatly marred, spoiled and injured the same, and also hindered and prevented the sale thereof under said mortgage for a long space of time, to wit, until the 21st day of November, 1893, and also broke open the safe of said plaintiffs and seized and destroyed their private books and papers, and other wrongs to said plaintiffs then and there did, to their great damage.

And said plaintiffs further aver that said stock of merchandise consisted principally of goods designed and purchased by said plaintiffs for sale during the fall of the year, and which are usually sold during that season, to wit, during October and November, and for which goods there is no ready market nor can advantageous sales thereof be made except during those months; and that by reason of the wrongful acts of said defendants and their agents as aforesaid, the sale of said goods was hindered and prevented during the time at which an advantageous sale thereof could be made, to wit, to November 21, 1893; whereby said goods were greatly injured, depreciated in value and great loss and damage resulted to said plaintiffs, to wit, twenty-five thousand dollars ($25,000).

Wherefore said plaintiffs say that they are injured and have sustained damage to the amount of fifty thousand dollars ($50,000), and therefore they bring suit, etc."

BRIEF OF PLAINTIFFS IN ERROR, TENNEY, CHURCH & COF-
FEEN, ATTORNEYS.

Where the mortgagee on breach of any of the conditions of the mortgage has lawfully taken possession of the property thereunder, the legal title passes to him; but we have always understood that the term "legal title" was used in this connection in distinction from the equitable title, just as it is said that the legal title to land is in a trustee although the real beneficial ownership may be in another. The right to hold and the power to convey are in the trustee. Just so the right to hold and the power to convey are in the mortgagee under the circumstances stated; but this does not mean that he has become the unqualified owner of the property. On the contrary, it seems to be clear that the equitable title, the beneficial ownership, still remains in the mortgagor. Durfee v. Grinnell, 69 Ill. 371.

Certain propositions seem to be well established, viz.:

1.   That although the legal title passes to the mortgagee, and in some cases is said to become absolute, yet this is only for the purpose of enabling the mortgagee to collect his mortgage debt.

2.   That the mortgagee is responsible to the mortgagor for the due care and honest disposal of the property, and is accountable to him for any surplus.

These propositions are certainly inconsistent with any theory of absolute, unqualified ownership in the mortgagee, and show that the real equitable owner is still the mortgagor. We believe they are entirely sound.

A leading case on the subject is that of Charter v. Stevens, 3 Den. 33, in which the Supreme Court of New York held:

1.   The execution of the mortgage transferred to the mortgagee a defeasible title, which became absolute at law by failure to pay at the stipulated time.

2.   The mortgagor, however, was not thereby divested of all interest in the property, for he still had an equity of redemption which a court of equity would protect and enforce.

3.   When the mortgagee sold part of the property for sufficient to pay the mortgage debt, this was equivalent

Frankenthal v. Meyer.

to absolute payment, just as though the mortgagor had tendered and the mortgagee had accepted the amount due, and the mortgagee's title in the property remaining unsold was thereby extinguished, and a subsequent sale thereof by the mortgagee was a conversion for which he was liable to the mortgagor in trover.   See, also, Freeman v. Freeman, 17 N. J. Eq. 44; Bird v. Davis, 14 N. J. Eq. 407; Woodside v. Adams, 40 N. J. Law 417; McConnell v. People, 84 Ill. 538; Pomeroy, Jur., Sect. 164; Cobbey on Chat. Mtgs., Sect. 937; Herman on Chat. Mtgs., Sect. 189–197; Jones on Mtgs., Sects. 7 and 340.

Brief of Defendants in Error, T. A. Moran, Attorney.

In Durfee v. Grinnell, 69 Ill. 371, the court, by Mr. Justice Walker, says:

"There can be no question that a chattel mortgage is but a conditional sale, and when the mortgagor fails to perform the condition, the title, so far as it is held by the mortgagor, vests in the mortgagee.   In this case the condition upon which the property was to vest, was that the mortgagees should feel themselves unsafe or insecure.   They reserve the right in the mortgage to exercise the power, and when they did so, the title to the property vested in the mortgagees.   But according to the stipulation contained in the mortgage, when they took the property they became liable to pay the mortgagor for any surplus that might remain after the mortgage debt, interest and proper charges were paid.   But this liability in no wise prevented the title from vesting in them as joint purchasers."

"Until a breach of the condition in the mortgage, the mortgagor holds a contingent interest in the property that is liable to levy and sale on execution or attachment; but where the condition of the mortgage becomes forfeited, the title to the property becomes absolute in the mortgagee, and he is then vested with the legal title and may proceed under the mortgage.   After the maturity of the debt or the failure of the condition upon which the mortgagor may retain possession, the mortgagee has the legal right to reduce

the property to possession, and, having done so, he has the legal right to retain it and an execution or attachment can not deprive him of it." Pike v. Colvin, 67 Ill. 227.

"It is well settled that upon failure of the mortgagor to perform the condition of the mortgage, the legal title to the chattel mortgage becomes vested absolutely in the mortgagee." Simmons v. Jenkins, 70 Ill. 479. See, also, Whittemore v. Fischer, 132 Ill. 243, 256; Dupee v. Gibson, 36 Ill. 197; Rhimes v. Phelps, 3 Gilm. 455; Larmon v. Carpenter, 70 Ill. 549; McConnell v. People, 84 Ill. 583.

It is needless to cite authorities that after condition broken or after the mortgagee has taken possession under the mortgage, the mortgagor has no interest in the chattels which is subject to legal process or cognizable at law. Pike v. Colvin, 67 Ill. 227; 2 Wait's Actions & Defenses, 217; Gifford v. Hilson, 18 Brad. 214; Glass v. Doane, 15 Brad. 66.

Here the appellee has only an equitable title, and that never confers the right to sue at law. McLean County Coal Co. v. Long, 91 Ill. 617.

"Personal property is essentially the subject of absolute ownership and can not be held for any estate. The property in goods can only belong to and be vested in one person at one time. Lands may be so conveyed that several persons may possess in them at the same time several distinct vested estates of freehold, one of them being in possession, others in remainder, or the last, perhaps, in reversion, but the law knows no such thing as the remainder or reversion of a chattel. It recognizes only the simple property in goods, coupled, or not, with the right of immediate possession." Williams on Personal Property, 7th Ed., Chap. 2, * page 22; Dicey on Parties to an Action, 344; Broom on Parties to Actions, * page 198 (contained in Vol. 56, Law Library, Phila. reprint).

MR. PRESIDING JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The question here presented is: When the mortgagee of personal property has, after default, taken possession of the

goods for the purpose of foreclosure, can the mortgagor maintain an action of case against a third party, who without right and with violence takes such property from the possession of the mortgagee, against his will, the value of the goods being largely in excess of the amount of the mortgage ?

It is said that after default and possession taken by a mortgagee of personal property, the legal title to such property is vested in the mortgagee and that he alone can maintain an action at law for a seizure of or an injury done to such goods.

That the legal title of goods mortgaged, is, after breach of condition, vested in the mortgagee, is announced in numerous cases. Pike v. Calvin, 67 Ill. 227; Simmons v. Jenkins,76 Ill. 479; Whittemore v. Tirchner, 137 Ill. 243; Blain v. Foster, 33 Ill. App. 297.

Nevertheless, the mortgagor retains an interest in the goods until divested thereof by sale under the provisions of the mortgage, or by lapse of time his right of redemption has been lost. McConnell v. People, 84 Ill. 583; Jones on Chattel Mortgages, Secs. 682, 687 and 688; Waite v. Dennison, 51 Ill. 319–323; Whittemore v. Fisher, 132 Ill. 243 and 256.

By the old common law, a mortgage of personal property gave an absolute title to the mortgagee on breach of condition. No process of foreclosure was necessary, and there was no right of redemption. Jones on Chattel Mortgages, Sec. 681; Taber v. Hamlin, 97 Mass. 489; Burtis v. Bradford, 122 Mass. 127.

In respect to mortgages of real property, also, the legal estate vested in the mortgagee and was forfeited upon default; equity established the right of redemption after default. Jones on Mortgages, Vol. 2, Sec. 11.

A mortgage of land is one thing at law and another in equity; at law it is an estate, in a court of chancery it is but a security.

Notwithstanding this, a mortgagor of lands may maintain an action at law for an injury to his reversion. Jones on Mortgages, Sec. 664.

The law courts, following the rule first set up in equity, have come to recognize mortgages of all kinds to be exactly what they are—mere securities. The title may be differently regarded and treated in different forums, but the actual fact that, until foreclosure has in some way been had, the mortgagor has an interest in the property, is recognized at law as well as in equity.

While courts have, and do frequently, speak of the title of the mortgagee being, after forfeiture, that is after default, absolute, they do not mean that the ownership of the mortgagee is absolute. Nowhere is it now held that upon forfeiture the mortgagee may sell the property, give it away or destroy it without reference to or consideration for any right or interest of the mortgagor. Waite v. Dennison, *supra;* Phares v. Barbour, 49 Ill. 370; Hungate v. Reynolds, 72 Ill. 427; Cobbey on Chattel Mtgs., Sec. 937; Jones on Chattel Mtgs., Sec. 682; Dupuy v. Gibson, 36 Ill. 197; Story's Eq. Juris., Sec. 1031; Treat v. Gilmore, 49 Me. 34.

In Chitty's Pleadings, 16th Am. from the 6th Eng. Edition, it is said:

" The action of case is a proper proceeding for an injury to property when the interest to it is in reversion."

The term reversion is, indeed, often used in such a sense that it is descriptive, only, of an interest in land. Coke's Littleton, 142 b; 4 Kent's Com., 354.

It is also used when speaking of the right to a return of such personal property as does not perish with a short term of " using," the possession of which property the general owner has temporarily parted with. Gordon v. Harper, 7 Tenn. Reps. 9; Rapalje's Law Dictionary, 1125.

In this State the mortgagor of chattels has, after default and possession taken by the mortgagee, no legal estate in the mortgaged property. Kenyon v. Shuck, 52 Ill. 382; Durfee v. Grinnell, 69 Ill. 371; Simmons v. Jenkins, 76 Ill. 479; Whitmore v. Fisher, 132 Ill. 243.

And after default and possession taken, the interest of the mortgagor being equitable only, the goods can not be taken and sold upon an execution against him. Durfee v. Grinnell, *supra;* Simmons v. Jenkins, *supra.*

In some States the rule is otherwise, it being held that the mortgagor having, until barred therefrom by foreclosure, a subsisting interest in the property, capable of enforcement, such interest may be sold on execution. Woodside v. Adams, 40 N. J. Law 417; Frigate v. Clarkson, 2 B. Monroe 41; see, also, Mears v. The London & S. W. Ry. Co., 103 Com. Law 849.

Having in this State, after default and possession taken by the mortgagee, no legal estate in or legal claim to the mortgaged property, his relation to the same being that of a mere *cestui que trust*, it would seem that a mortgagor can not, under such circumstances, maintain at law an action based upon his merely equitable interest.

The rule laid down in Chitty on Pleading, 16th Am. from 7th Eng. Ed., is that " a *cestui que trust* or other person having only an equitable interest can not, in general, sue in the courts of common law against his trustee, or even a third person, unless in cases where the action is against a mere wrongdoer, and for an injury to the actual possession of the *cestui que trust*."

That it would be well if, in such a case as this, where the mortgagor seeks merely a judgment for money, and the value of his interest in the property is easily ascertainable, being its worth, less the claim of the mortgagee thereon, the mortgagor might bring suit at law in his own name, we are disposed to think.

We do not regard the mortgagor as remediless in such a case as this.

The mortgagee has a right of action against appellees for their invasion of his lawful possession, and in such action he can recover not only the damage he has suffered but also the damage done to the mortgagor. Story on Bailments, Sec. 93; Edwards on Bailments, Sec. 39; Perry on Trusts, Sec. 328; Sedgwick on Damages, Sec. 76; Atkins v. Moore, 82 Ill. 240; Sutherland on Damages, Vol. 1, 210, Vol. 3, 474.

It does not appear in this case that the mortgagee refuses to bring such action, but if he does, or if he fails to vigorously prosecute the same, we do not think appellee remediless.

We do not regard the allegation as to ownership of books and papers as sufficient to warrant a recovery for the taking of such articles.

Upon further consideration we are satisfied that in this State there is no authority for the maintenance of such a suit as this.

The judgment of the Circuit Court is affirmed.

GARY, J.   In Yates v. Joyce, 11 Johns. 136, the plaintiff had only an equity, being but an assignee (which was no' title at law) of a judgment which was a lien upon premises wasted by the defendant; yet he had his action.   In the eighty years which have since elapsed, courts of law have advanced in noticing equities.

A chattel mortgage is not a conditional sale.   If it were, the debt, the consideration of the transfer of such title as passes, would be satisfied by the transfer.   But not being satisfied, the mortgagee may sue, and it is a defense *pro tanto* to the mortgagor and his surety, that the mortgagee has not dealt fairly with the mortgaged chattels.

Courts of law will inquire into the matter.   Phares v. Barbour, 49 Ill. 270;  Waite v. Dennison, 51 Ill. 319.

I think the judgment should be reversed.