Featherstone v. Hendrick.

## John Featherstone v. W. H. Hendrick.

1. SPECIAL GUARANTIES—*Consideration Necessary.*—In an action upon a special guaranty by indorsement in blank upon a promissory note, it is necessary for the plaintiff to aver and prove a consideration for the guaranty; this is done in the first instance by showing the genuineness of the guarantor's signature, the presumption being that the signature was placed upon the note at the time it was made, and is a part of the original transaction. and the consideration for the note is also the consideration for the guaranty.

2. SAME—*Made After Delivery of a Note.*—Where a special guaranty by a blank indorsement upon a promissory note is shown to have been made after the delivery of the note in pursuance of some subsequent arrangement, the original consideration for the note will not support the guaranty, and the burden of proof is upon the plaintiff to show a new and express consideration.

3. SAME—*Extension of Time a Sufficient Consideration.*—An agreement to extend the time of payment of a promissory note is a sufficient consideration for a special guaranty of such payment.

4. PROMISSORY NOTES—*Blank Indorsements Explained by Parol.*—The character of the undertaking of a party not a payee of a note, whose name appears on the back of a note, may be shown by parol evidence.

5. TRUSTEE—*A Purchaser at His Own Sale.*—While it is the law that a trustee may not become a purchaser at his own sale, the sale is not void, but only voidable.

6. CHATTEL MORTGAGE—*Mortgagee Allowing Property to be Taken Out of His Possession—Rights of a Guarantor.*—The holder of a prom-

issory note secured by a chattel mortgage, and also guaranteed by a third party, seized all of the property he could find, sold the same under the power of sale in the mortgage, applied the proceeds upon the note and sued the guarantor for the balance. On the trial it appeared that the property not found was in the plaintiff's possession after the maturity of the note, and that he voluntarily let it be taken away. *Held,* as between him and the guarantor of the note, he, the plaintiff, was responsible for the value of such property.

**Assumpsit.**—Payee v. Guarantor, etc. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the March term, 1895. Affirmed if remittitur is entered, otherwise reversed and remanded. Opinion filed July 5, 1895.

KNIGHT & BROWN, attorneys for appellant, submitted that when a party writes his name on the back of a note before delivery it is presumed to be a guaranty, but if such party writes his name on the back of a note after delivery it is presumed to be only an indorsement of the note, and sufficient consideration must be alleged and proved.

In White v. Weaver, 41 Ill. 409, the court say :

" The whole controversy in this case turns upon the question whether appellee signed his name as a guarantor or assignor. If he wrote his name on the note before its delivery, and did not declare over his signature the nature of the liability he intended to assume, the law will charge him as a guarantor. If, however, he indorsed his name after the note went into circulation, the presumption would be that he designed only to incur the liability of an indorser. In such a case, to overcome that presumption, it would devolve upon the holder to show that he had agreed to guarantee the payment of the note; and such being a new and independent undertaking, it would require a consideration to support it. The holder of a note indorsed in blank has a right to fill up the indorsement by writing over the signature anything consistent with such instruments and in accordance with the agreement of the parties. But if a contract of guaranty is written by the holder when an assignment was only intended, the fact may be shown and defeat a recovery."

See, also, Camden v. McCoy, 3 Scam. 436; Cushman v. De-

ment, 3 Scam. 497; White v. Weaver, 41 Ill. 409; Boynton v. Pierce et al., 79 Ill. 145; Blanchard v. McCullen, 7 Brad. 431; 2 Parsons on Notes and Bills, 125–6.

SMITH, HELMER & MOULTON, attorneys for appellee, contended that the signature of Featherstone was obtained upon a promise to extend the time of the note for an agreed period, and that it, on Hendrick's part, was carried out.

Appellee called the attention of the court to the case of Ives v. McHard et al., 2 Brad. 176. In this case Ives signed the note with the word " security " at the end of his name, after the payee of the note had died, and while the note was in the hands of the administrator of the payee. Subsequently, Ives wrote a letter agreeing to be held as principal on the note. The opinion is a well considered one; many authorities were cited on both sides, and the opinion of the court shows that they were carefully considered. The court decides that Ives is to be held as a guarantor, and uses this language : " Upon looking into the authorities it seems to be well settled that, where a note is, long after its execution, signed by some one either on the face or on the back as security, the person so signing, if there was a consideration, is separately liable as a guarantor." See also Blanchard v. McCuller, 7 Brad. 432; Klein v. Currier, 14 Ill. 240; Harwood v. Kiersted, 20 Ill. 372; Parkhurst v. Vail, 73 Ill. 343; Cassell v. Morrison, 8 Brad. 175.

In the decisions of other courts we find a great diversity of opinion as to the liability of a third party who signs his name on the back of a note at the time of its delivery to the payee, but as to subsequent indorsements, the overwhelming weight of authority is to the effect that the consideration once being established, the contract is presumptively that of guaranty. In Rey v. Simpson, 22 How. 341, the following statement of the law of the case is made :

" When a promissory note, made payable to a particular person or order, as in this case, is first indorsed by a third person, such third person is held to be an original promisor, guarantor or indorser, according to the nature of the trans-

action, and the understanding of the parties at the time the transaction took place. If he put his name on the back of the note at the time it was made, as surety for the maker and for his accommodation, to give him credit with the payee, or if he participated in the consideration for which the note was given, he must be considered as a joint maker of the note. On the other hand, if his indorsement was subsequent to the making of the note, and he put his name there at the request of the maker pursuant to a contract with the payee for further indulgence or forbearance, he can only be held as a guarantor." See also Good v. Martin, 95 U. S. 93; Tenney v. Prince, 4 Pick. 385; McCorney v. Stanley, 8 Cush. 85; McCaughey v. Smith, 27 N. Y. 39; Stone v. White, 8 Gray 593; Innis v. Retter, 32 Tex. 717; Champion v. Griffith, 13 Ohio 228; Castle v. Rickly, 44 Ohio St. 490; Beckwith v. Angel, 6 Conn. 315; Irish v. Cutter, 31 Me. 537; Story on Promissory Notes, Secs. 133, 474; 1 Daniel's Negotiable Instruments (2d Ed.), 570; White v. Weaver, 41 Ill. 409.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee held, as payee thereof, three promissory notes for $1,000 each, which matured respectively four, eight and twelve months after November 30, 1889. The notes were made by one Miner Ball, and represented the purchase price of sixteen mules and one horse bought of the appellee by Ball. At the time of making the purchase and giving the notes, Ball executed to appellee a chattel mortgage on the same property as security.

About the time the first note matured, the appellant, in consideration that appellee would extend the time of the payment of said first note another four months, wrote on the backs of the two notes in question (and inferably on the first note also), as follows:

"John Featherstone.

I hereby waive notice of protest on the within note.

JOHN FEATHERSTONE."

The three notes were at that time in appellee's posses-

sion, and from the time they were made had always been in the possession of himself or his attorney.

The first note was paid, and $250 was paid on the second note a few days before the third note fell due. Subsequent to the beginning of suit against the appellant, the appellee recovered the proceeds of sale of some of the mortgaged mules which had been attached and sold by another creditor of Ball, and he also realized from a sale of four other mules found by himself an additional net sum, the two amounts aggregating $793.25. That sum constituted all that appellee received from the mortgaged property, and with the said payment of $250 was all that he ever got on account of the two last mentioned notes.

This suit was against the appellant upon the contract, alleged to be a guaranty thus created by his writing upon the backs of the second and third notes, and a judgment was rendered against him in the court below for the amount of said notes, less the deduction before indicated, and from that judgment, for $1,597.10, this appeal is prosecuted.

During the trial and after said notes with the writing upon the back, as aforesaid, had been introduced in evidence, the appellee's counsel obtained leave of court to withdraw the notes, and afterward again offered them in evidence with the addition, written over the blank signatures of appellant on the backs thereof, of the following words:

" For value received I hereby guarantee the payment of the within note at maturity."

The first contention of appellant is that if a stranger to the note writes his name on the back of a note after delivery it is presumed to be an indorsement, and not a contract of guaranty.

What we understand to be the settled law of this State was well said in Klein v. Currier, 14 Ill. 237:

" In an action upon a special guaranty like this, it is necessary for the plaintiff to aver and prove a consideration for the guaranty in order to maintain the action. This is proved, it is true, in the first instance, by showing that the defendant's signature is genuine; for when this is done, the

presumption is, that the name was put there at the time the note was made and as a part of the original transaction, and when that is the case, the consideration for the note is also a consideration for the guaranty. But whenever it is shown that the defendant executed the guaranty after the delivery of the note, in pursuance of some subsequent arrangement, the original consideration for the note will not support the guaranty, and the burden of the proof is again thrown upon the plaintiff to show a new and express consideration for the guaranty."

It was also said in Ives v. McHard, 2 Ill. App. 176:

" Upon looking into the authorities, it seems to be well settled that where a note is, long after its execution, signed by some one, either on the face or on the back, as security, the person signing, if there were a consideration, is separately liable as a guarantor and not as a joint maker unless such signing was originally intended, and that it was merely delayed."

The proved and admitted facts in the record abundantly establish that the appellant agreed and intended to become a guarantor of the notes, and that the consideration therefor was the agreement by appellee to extend the time of payment of the first note, which was done, and such being the legal effect of his writing, supported by such consideration, we think that under well known rules the appellee had a right to write the words of guaranty over his several signatures. That the agreement to extend or forbear collection of the note was a good consideration to support the guaranty of appellant. See Webbe v. Romona-Oolitic Stone Co., 58 Ill. App. 222.

It seems to be well settled that the character of the undertaking of a party not a payee of a note, whose name appears on the back of a note, may be shown by parol evidence, without a violation of the rule which forbids a varying by parol of the terms of a written agreement. Boynton v. Pierce, 79 Ill. 145; Kingsland v. Koeppe, 35 Ill. App. 81; same case, 137 Ill. 344.

And as already said, we think the evidence amply justi-

fied the conclusion of the  jury and court below, that appellant incurred the liability of a guarantor.

With reference to the four mules that were seized by the appellee under the chattel mortgage and sold at public sale and bid in by himself, the  following instruction was asked by the appellant and refused by the  court:

" You are further instructed that if you believe  from the evidence in this case that the plaintiff, Hendrick, took actual possession of the four mules mentioned and described in the chattel mortgage, that then the defendant, Featherstone, is entitled to be credited with the actual value of such mules at  the  time that  Hendrick took  possession  of  the  same, without any regard to the amount for which said Hendrick sold said mules at public auction or otherwise."

The  instruction was properly refused.   While it is the law that a trustee may not become  a  purchaser at his own sale, still such a sale is  not void, but is  only voidable.   The mere fact that the sixteen mules, of which the four in question were a part, together with a horse worth $300, and a cart, were  sold  by the  appellee to Ball in  November, 1889, for $3,000, furnished no evidence of what the value of the four particular mules was  in November, 1891, when  they were seized and sold by appellee.   To have made  the instruction applicable, some evidence showing that the mules were worth more than the price  at which they were bid off  by appellee should have been furnished.

Although appellee was without legal authority to  bid at the sale of the four mules, the sale was conducted after due notice, by a licensed  auctioneer, and appellee  was the highest bidder, and there is nothing to  show but  that he acted in perfect good faith.   Appellant did not even  show that he was willing to take  the  mules off  of appellee's hands at the price at which they were bid  off, and  there was no evidence whatever of  their actual value  at  the time of  their seizure and sale.   Waite v.  Denison, 51  Ill. 319;  Phares v. Barbour, 49 Ill. 370.

It appears that the horse, which was covered by the chattel mortgage, came back into the possession of the appellee

about a year after it was sold by him to Ball, by being brought to and put into his stable by a man named Bailey, who claimed to own it. Appellee himself testifies to that fact, and that the horse was cheap at $300. Appellant offered to prove the circumstances under which the horse was in appellee's possession, and to that end asked of appellee how long the horse remained in his possession at the time it was last in his stable.

The question was objected to and the objection was sustained.

The appellant also offered an instruction upon the subject of the appellee's possession of the horse, which was refused. That instruction was as follows:

" The jury are further instructed that if you believe from the evidence in this case that the horse mentioned and described in the chattel mortgage, given to secure the notes in question, came into the actual possession of the plaintiff, Hendrick, and that Hendrick, without the knowledge or consent of the defendant, Featherstone, voluntarily permitted such horse to be taken out of his possession and taken away so that it could not be reached by the chattel mortgage, then you are instructed that Featherstone is entitled to a credit in this case equal to the value of such horse."

We think the offered evidence was admissible, and that it was error to exclude it, and the instruction which stated the law, substantially, would certainly with such evidence before the jury, have been proper.

It is said by appellant's counsel, although we do not find it so stated in the abstract, that appellee was a livery stable keeper, and it is argued therefrom that the bailment of the horse to appellee was only to him as a liveryman, but we do not see any force to that position. The appellee testified that the horse was brought to his stable " about a year after I (he) sold it " to Ball.

The unpaid notes matured in eight and twelve months, respectively, from November 30, 1889, which was the date the horse was sold by appellee to Ball, and the mortgage gave to appellee, by its terms, the right to take possession

of the mortgaged property at any time after default in the payment of said notes or of any one of them when due. Certainly the eight months' note was due at the time the horse came back into appellee's possession, and under the rule that appellee's statement of the time should, where it is susceptible of two meanings, be construed against himself rather than in his favor, "about a year," should be held to be more than a year, and therefore later than the maturity of the twelve months note.

The horse, therefore, having come into appellee's possession at a time when he had a right to keep it, and he having voluntarily let it be taken away, he should be held, as between himself and the guarantor of the notes, accountable for its value as of that date. His testimony shows that the horse was worth $300. Interest on that sum at the rate of eight per cent per annum, which is the rate that the notes bear interest, from the time when the horse was in the possession of appellee to the date of judgment, is about $98.

If, therefore, the appellee will, in this court, within five days from the filing of this opinion, remit from said judgment the sum of $398, the judgment of the Circuit Court will be affirmed for the sum of $1,199.10; otherwise the judgment will be reversed and the cause remanded.

Affirmed if remittitur be entered; otherwise reversed and remanded.