# Andrew B. McConnell *et al.*

## *v.*

# The People, for the use of David P. Purvines.

1. Estoppel—*a party is estopped to question the application of funds to the payment of his debt made with his assent.* Where an officer, who sells personal property on an execution, applies the surplus of the proceeds of the sale to the payment of a chattel mortgage, executed by the defendant in execution upon the property so sold, and the owner is present, and assents to such application, he is estopped from afterwards calling in question the disposition of such surplus.

2. Sheriff's sale—*application of proceeds of sale of personal property, after payment of execution.* Where a sheriff, by virtue of an execution in his hands against the owner of personal property upon which there was a chattel mortgage, executed by the owner, levied upon such personal property, and advertised it for sale, under the execution, upon a certain day, and the owner of the chattel mortgage directed the sheriff to sell the property under the chattel mortgage at the same time he sold under the execution, and the sheriff did so, without giving any further notice of such sale than the one under the execution, and applied the proceeds to the satisfaction both of the execution and the mortgage debt, and the owner of the property had notice that it was the intention of the mortgagee to have the property thus sold, and was present at the sale, and, after it was over, inquired whether there was any balance after paying the execution and mortgage debt, and stated if there was he wanted it, it was *held*, that the owner's conduct in not making objection amounted to an acquiescence in, or assent to, the payment of the mortgage debt out of the proceeds of the sale, and that he was estopped from calling it in question.

Appeal from the Circuit Court of Sangamon county; the Hon. John A. McClernand, Judge, presiding.

Messrs. Robinson, Knapp & Shutt, for the appellants.

Messrs. Morrison & Patten, for the appellee.

Mr. Justice Sheldon delivered the opinion of the Court:

September 16, 1872, Purvines executed a chattel mortgage to one John Champion, of a lot of horses, buggies and carriages, to secure the payment of a note for $750, given by

the former to the latter, dated August 26, 1872, payable one year after date, with ten per cent interest. The property, by the terms of the mortgage, was to remain with the mortgagor until the maturity of the note, with the provision that. in case of default in payment, or of any danger or apprehension that the property might be taken in execution against the mortgagor, then the mortgagor should deliver up the property to the mortgagee, and that, on default of payment. or in case of any danger from execution as aforesaid, then the mortgagee, or his attorney, agent. or assigns, might take possession of the property, and sell the same at public sale to the highest bidder, for cash in hand. for. the satisfaction of the debt, after giving at least ten days' notice of the sale, in the manner therein prescribed.

On the 28th of October, 1872, one of the appellants, McConnell, as sheriff of Sangamon county, levied upon said mortgaged property, by virtue of an execution which came into his hands October 19, 1872, from the circuit court of Sangamon county, in favor of one Cartwright, against Purvines, and on the same day, October 28, McConnell advertised the property for sale on the 8th of November, 1872. Before the sale by the sheriff, and on said 8th of November, Cartwright, the plaintiff in execution, purchased of Champion, the mortgagee, the note and chattel mortgage—the note not being indorsed to him until after the sale—and on that day, Cartwright directed the sheriff to sell the property to satisfy the mortgage debt, as well as the amount of the execution. On the 8th of November, McConnell sold the property under the execution, and also under the mortgage, as the agent of Cartwright. No other notice of the sale was given than the one given by the sheriff October 28, 1872. The sheriff's return to the execution is, that, by virtue of the execution, he sold the property for $1696.50, of which amount he had applied the sum of $765 to satisfy the mortgage, which was a prior lien to the execution. The execution was, besides, satisfied in full from the proceeds of the sale.

This was an action against McConnell, and his sureties on his official bond as sheriff, to recover the sum of $765 of said proceeds, which he had paid to satisfy the mortgage. There was a recovery against the defendants for $765, and they bring the case here by appeal.

The question presented by the record is, whether, under the facts of the case, there was here a right of recovery.

Without adverting to anything else, we are inclined to the opinion that there is enough in the record to establish the fact of an assent or acquiescence on the part of Purvines in the disposition which the sheriff made of that portion of the proceeds of the sale sued for, to-wit: the payment of it upon the mortgage, and that that is a sufficient ground to defeat the right of action. There is the following evidence bearing upon that point: Purvines testifies that, about a week before the sale, he was told by his brother that Cartwright was going to buy the Champion mortgage, and sell under it. Elliott, the deputy sheriff, testifies that Purvines came to the sheriff's office two or three days before the sale, and inquired of him how much it would take to release the property; that he, Elliott, informed him Cartwright had said he was going to buy the mortgage, or had bought it, and was going to have the property sold under that also; that it would require about $1700 to pay all there was against the property, mentioning the mortgage, executions which were in the hands of a constable, and the execution and fee bill in the sheriff's hands. Purvines said if he could raise the money to pay the execution, he thought he could arrange the mortgage, and should do so if he could. Cartwright, on the day of sale, stated to the sheriff that he was the owner of the mortgage, and directed the sheriff to sell to satisfy the debt described in the mortgage.

The sheriff announced, before making the sale, that the property would be sold free from all liens, mentioning the mortgage as one that would be paid out of the proceeds. Purvines testifies that the sale was about half over when he

got there; that when he got to the sale, he heard for the first time that the property was to be sold to pay the mortgage debt, in addition to the executions. McConnell and Elliott both testify that Purvines came to the sheriff's office twice, after the sale was made, and inquired whether there was anything left, after paying the executions and mortgage; if so, he wanted it; that he took no exceptions to the sale. Purvines testifies that he does not think he called at the sheriff's office to make any inquiry about the mortgage or sale.

Under this evidence, we think Purvines must stand affected with knowledge that the property was sold to satisfy the mortgage debt, as well as the execution, and that his conduct amounted to an assent or acquiescence in the payment of the mortgage debt out of the proceeds of the sale.

Had Purvines made objection to the sale of the property to satisfy the mortgage debt, or to the appropriation of any of the proceeds of the sale to that purpose, the officer might have refrained from doing what he did do, or have taken steps to ascertain his right and duty in the premises, and to fully protect his own interest. But, from Purvines making no objection, and his implied sanction of what was done, the sheriff was lulled into security, disarmed of apprehension as to the regularity of his course, and encouraged to do what is now complained of.

We think that Purvines should be held estopped, by his own conduct, from calling in question the disposition which McConnell made of a portion of the proceeds of the sale, in the payment of this mortgage debt.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*