[Civ. No. 20054. Second Dist., Div. Three. Oct. 28, 1954.]

HELEN A. KUCHERA, Appellant, v. JAMES C. KUCHERA, Respondent.

Robbins & Loeb and Samuel D. Robbins for Appellant.

Butts & Grosenbaugh, John Leo Harris and Robert Butts for Respondent.

WOOD (Parker), J.—Plaintiff appeals from an order granting defendant's motion to vacate a final judgment of divorce.

Plaintiff and defendant were married on April 24, 1920. On January 14, 1949, plaintiff filed a complaint for divorce alleging extreme cruelty. On February 24, 1949, plaintiff obtained an interlocutory decree of divorce by default; and a property settlement agreement was approved by the court, and defendant was ordered to pay plaintiff $100 a month commencing March 1, 1949.

On January 21, 1953, plaintiff filed an affidavit in support of her application for final judgment of divorce. In the affidavit it was stated that since the granting of the interlocutory judgment the parties had not become reconciled, and had not lived or cohabited together. On January 22, 1953, a final judgment was entered.

On June 8, 1953, defendant filed a notice of motion to vacate the final judgment on the ground that it had been secured upon a false affidavit executed by plaintiff. The motion was submitted upon affidavits of the parties. On June 25, 1953, the motion was granted. The minutes of the court, with respect to granting the motion, are as follows: "Motion of defendant to vacate and set aside Final Judgment of Divorce (Submitted June 18, 1953) Motion granted. (The affidavits of both parties show that they *did* live together for an extended period, which is contrary to the affidavit for the final decree)."

The affidavit, filed by defendant in support of his motion to vacate the final judgment, recited, in part, as follows: At the time the interlocutory judgment of divorce was granted the parties were living apart. During March, 1949, he learned that plaintiff was in a hospital. A few days later he took her

to her home, which was on Putnam Street where they had lived prior to their separation. Thereafter, for several weeks, he visited plaintiff at her home almost every evening. After she returned to her occupation, defendant would "pick her up" where she worked and they would have dinner in a restaurant. He then "started sleeping on a davenport" in her home. In the mornings plaintiff would prepare breakfast and then they would go to their jobs. She stated that she would never be a wife to him as long as they lived in the house on Putnam Street but that if defendant would build a new home for her they would start all over again. Thereafter they looked at lots in various locations, and on May 16, 1949, they bought a lot on Webster Avenue. Defendant then drew plans for a new house, and did at least 25 per cent of the work in constructing it. Plaintiff and defendant used their joint funds to purchase the lot and construct the house. While the new house was being constructed, defendant lived with plaintiff in the house on Putnam Street. He ate and slept there and lived a normal married life except that they had no sexual relations because plaintiff was not well. During the time of his resumed residence at the Putnam Street house he gave plaintiff his pay check and she returned to him such money as he needed for his personal expenses. In December, 1951, they moved into the new house on Webster Avenue where they occupied the same bedroom but slept in twin beds. During 1952 and the early part of 1953 they entertained old friends and neighbors in their new home, and they met and worked with people as husband and wife. Federal and state income tax returns for the years 1951 and 1952 were made by them as husband and wife. Property taxes on the new home were assessed in the names of both plaintiff and defendant. On January 19, 1953, a dispute arose between them and the next day he left the home on Webster Avenue and has not resided there since that time. Several days after he left that home he discovered that plaintiff had executed an affidavit for final judgment of divorce and that a final judgment had been entered.

On June 19, 1953, plaintiff filed an affidavit, in opposition to defendant's motion to vacate the final judgment, wherein she stated, in part, as follows: The extreme cruelty alleged in the complaint as a ground for divorce consisted, in part, of defendant becoming intoxicated and abusive. For approximately seven months after she resumed her employment, after being in the hospital, the defendant waited for her at

the conclusion of her day's work. On a number of occasions, at defendant's request, plaintiff had dinner with him. During this seven-months' period, plaintiff told defendant that the Putnam Street house was too large for her and she desired to build a four-room house. Defendant drew plans and specifications for the house. Plaintiff then, using her separate funds, commenced construction of the house, which had not been completed at the time of making this affidavit. In August, 1949, plaintiff's sister visited plaintiff for two weeks. During that time defendant took plaintiff and her sister to dinner. He would request permission to change his clothes and take a shower at her home prior to taking them to dinner, and at such times he would surreptitiously bring clothes and other personal effects into plaintiff's home and leave them there. When her sister departed, defendant moved into plaintiff's home and immediately returned to his "daily drinking bouts." He continuously threatened that if plaintiff did anything about removing him from the premises he would kill her. He slept either on a couch or a chair in plaintiff's home. Although plaintiff retired to her bedroom, she never fully undressed but slept in preparation of being driven from her home—on several occasions defendant became so violent that plaintiff was forced to flee from her home in the early hours of the morning. During the time he lived there plaintiff had no marital relationship with defendant, and at no time subsequent to filing the complaint for divorce has she spent a night in the same bedroom with defendant. Plaintiff was not physically incapable of entering in sexual relations with defendant. During the few times defendant worked he occasionally turned over his pay check to her, but on those occasions he usually took back more money than he had given her. Any income tax returns which were made by plaintiff and defendant were made upon the advice of tax counsel, based upon the technical existence of the marriage status. On January 18, 1953, defendant became intoxicated and threatened plaintiff, and she ran into her bedroom. Defendant went into the bedroom and attempted to smother her by placing both hands over her face and holding her. Plaintiff broke away and ran to a neighbor's house where she spent the remainder of the night. The next day she went to the district attorney's office and signed a complaint against defendant for assault and battery. Defendant was called to the district attorney's office for a hearing, and he was advised that the complaint would not be filed if he would immediately get out of plaintiff's home and

leave her alone. He then moved from her home. Plaintiff did not agree to condone any of the acts of cruelty of defendant, and she never condoned any such acts.

Defendant filed an affidavit, in reply to the affidavit of plaintiff, in which he denied statements in plaintiff's affidavit concerning intoxication and physical violence on his part. He also stated in part therein that the only reason plaintiff gave for her failure to have sexual relations was that her health would not permit her to do so; and that he never at any time received advice from tax counsel concerning the advisability of filing joint income tax returns.

Plaintiff contends that the parties did not live together so as to effect a reconciliation and condonation sufficient to justify the vacating of the final judgment of divorce. As above shown, the motion to vacate the final judgment of divorce was made upon the ground that the affidavit for final judgment filed by plaintiff was false. The minute order indicates that the court granted the motion on the ground that the parties "did live together," and that plaintiff had failed to so state in her affidavit for final judgment. There was no finding whether there was condonation or reconciliation. It is not necessary to determine whether the affidavits are sufficient to show condonation or reconciliation. The question on appeal is whether the trial court erred in setting aside the final judgment on the ground that plaintiff's affidavit for said judgment did not accurately set forth the facts. In *Miller* v. *Miller*, 26 Cal.2d 119 [156 P.2d 931], the defendant filed an affidavit for entry of the final decree of divorce and he recited therein that he was not in default in any of the requirements of the interlocutory decree. Plaintiff filed an affidavit therein stating that defendant was in default in excess of $1,200 for medical care. In that case the court said at page 122: "The issue before the court on the motion to vacate the final decree involved the truth or falsity of defendant's affidavit theretofore offered in support of his application for entry of that decree." At the time of filing said affidavit therein defendant was in default in the payment of at least one bill for medical care of his child. The court also stated therein (p. 122), "[I]f defendant's affidavit was false in any amount, no matter how small, with respect to its recital of payments, it would warrant setting aside the final decree based thereon." In the present case the affidavits of the parties show that they lived in the same house more than three years after the interlocutory judg-

ment was entered, and more than two years after the final judgment could have been applied for. The question as to whether the parties had lived together was one of fact for determination of the trial court. ■ "When an issue of fact has been submitted to a trial court upon affidavits, and an appeal has been taken from the order therein, an appellate court is governed by the same rule that applies when such an issue has been submitted upon oral testimony, and if there is a substantial conflict in material statements in the affidavits the determination of the factual issues by the trial court is conclusive on appeal." (*Small* v. *Small*, 123 Cal.App.2d 870, 874 [268 P.2d 63], and cases cited therein.) ■ The affidavits of the parties were conflicting in material respects, and the court resolved the conflict with respect to living together against the plaintiff. The evidence was sufficient to support a finding that, contrary to plaintiff's statement, the parties did live together. It cannot be said that the trial court erred in granting the motion to vacate the final judgment.

The order is affirmed.

Shinn, P. J., and Vallée, J., concurred.