[Civ. No. 22255.   Second Dist., Div. One.   Dec. 18, 1957.]

EVELYN M. BESSESEN Appellant, v. DAVE DORSH-
KIND et al., Respondents.

Evelyn M. Bessesen, in pro per., Aaron L. Lincoff, Rosalind G. Bates and Roland S. Bates for Appellant.

Mindlin & Levy, George Manns, William Manns and J. D. Gluecksman for Respondents.

FOURT, J.—This is an appeal from a judgment in favor of defendants in a matter involving a foreclosure sale of mortgaged property.

In a complaint filed February 5, 1952, the plaintiff alleged that she was the owner of certain household furniture and furnishings; that she had borrowed from defendant Budget Finance Plan (hereinafter referred to as "Budget") $1,011.70, and had given Budget a chattel mortgage on such household furniture and furnishings, securing such loan; that on November 8, 1951, Budget entered the plaintiff's house and took the mortgaged property without the knowledge or consent of the plaintiff and removed the same to the warehouse of defendant Dave Dorshkind; that thereafter defendants sold the mortgaged property at pretended sales, without any right and without plaintiff's knowledge or consent; that plaintiff was given no opportunity to refinance or redeem her property, which, she set forth, was reasonably worth $35,000, and that the taking of the property was wilful, wanton and malicious. Plaintiff prayed for a judgment in the sum of $35,000 for actual damages, and $35,000 for exemplary damages.

Dorshkind answered the complaint and asserted that on November 8, 1951, at the request of Budget, he entered the house of the plaintiff and removed certain items of personal property therefrom and moved such property to his place of business for protecting and storing the same. He set forth that all of the items he took were described and set forth in the chattel mortgage; that Budget had foreclosed the mortgage and thereafter had sold the items to him, which items were described in an exhibit attached to the answer, consisting of the bulk of the mortgaged items; that he in turn sold the items at public auction to the highest and best bidders; that plaintiff had actual notice of the time and place of the auction sales; that auction sales scheduled for the sale of her mortgaged items were postponed at her request to give her an opportunity to repurchase the same; that after he sold enough of the items to recoup his purchase price, expenses of sale, handling and a reasonable profit, he sold no further items but voluntarily and gratuitously delivered to the plaintiff certain remaining items of furniture and furnishings, and in addition thereto gave her a check for $273.27, which she accepted and negotiated. Dorshkind further answered that the reasonable market value of the furniture and furnishings was $3,117.85; that the son of the plaintiff bought on behalf of the plaintiff at the sale $760.64 worth of the property, but refused to buy additional items although he had the means to do so. In substance, Dorshkind denied all of the other allegations of the complaint.

Budget's answer, filed on April 7, 1954, set forth substantially the same matters as Dorshkind had alleged in his answer, and in addition thereto set forth that the personal property was removed from the plaintiff's house at plaintiff's specific instance and request and at her direction; that on November 14, 1951, Budget conducted at its Hollywood office a public auction sale of the property pursuant to notice of foreclosure and sale mailed on November 8, 1951, to the plaintiff, by registered mail, directed to both of her last known addresses; that she had actual notice of the time and place of sale, made no objection thereto and did not appear thereat; that she was accorded many chances to repurchase the property but she failed to do so, and that the property was not worth more than $3,117.85.

The first trial was commenced on July 5, 1955, before Judge Haughton, and after all of the evidence had been introduced and the presentation of the case concluded, the judge declared a mistrial.

On February 28, 1956, the case again was called for trial, and at the request of plaintiff's counsel it was stipulated that the case could be submitted for retrial on the transcript of the proceedings had in the first trial. On April 6, 1956, the judge who presided at the second trial gave judgment for the defendants. A motion for a new trial was denied and plaintiff has appealed from the judgment.

A résumé of the facts is as follows: Plaintiff originally borrowed $832.28 from Budget on January 12, 1950, and that loan was designated Loan Number 5439. Payments were irregularly made until November 4, 1950, when her account was rewritten and a new loan of $830 came into existence, designated Loan Number 6684, which consisted of the balance of the previous loan in the sum of $632.63, plus added cash advanced to the plaintiff in the sum of $197.37. Before any payment was made on that loan it was rewritten on December 21, 1950, and a new loan amounting to $1,250 came into existence, designated Loan Number 6942, which consisted of the balance of the previous loan in the sum of $830 plus added cash then advanced to the plaintiff in the sum of $420. Plaintiff's payments on this loan were very irregular, and again the loan was rewritten on October 3, 1951, and the final loan designated as Loan Number 8136 came into existence, consisting of the balance of the previous loan of $989.30, and added cash advanced to the plaintiff in the sum of $22.40. This loan was evidenced by the promissory note and chattel mortgage in question. Plaintiff defaulted on the first payment in the sum of $66.25, which came due on November 4, 1951. In a telegram sent by plaintiff to Budget on November 3d, 1951, she set forth among other things, the following: "Hope your attorney has power arrest husband Paul Bessesen selling furnishings. . . . Ask attorney place dependence suit immediately deserted penniless please wire 500 dollars hotel Monte Cassino . . . Send name brillant attorney."

At about the same time, in a letter from the plaintiff, written on the stationary of the Hotel Monte Cassino (where she stated she was living), to Budget, Budget learned that plaintiff had left the United States and was in Mexico City, Mexico; that plaintiff's husband had sold the grand piano which was a part of the security for the debt between plaintiff and Budget; that a felony warrant had been issued for the arrest of plaintiff and that extradition papers had been ex-

ecuted by the governor; that she would gladly renounce her American citizenship and might go to Canada or Australia, and had no money to pay the debt; that she had incurred a $200 hotel bill; that she was out on bail and had been told to appear in court November 9th; that before Mr. Bessesen was arrested for selling the piano she wanted her attorney to be given a chance to serve her husband with separate maintenance papers. In the letter she also requested that Budget send "at least three hundred dollars to get me started on a life of freedom in another country." She also set forth in the same letter many other matters, such as,

"My *son*! influenced by his evil degenerate father tried to commit me to a mental institution in order to grab my property but he failed miserably and the judge made a fool of my son.

. . . . . . . . . . . . .

". . . The 'hand under the table' is my criminal father-in-law who told me over the phone that if I didn't divorce his son he would have me put in a mental institution from which I would never escape. He says 'It is so easy to end life! Of course it is—just one overdose of shock treatment would do the trick. I say would as he isn't going to have a chance to kill me as threatened.

. . . . . . . . . . . . .

"You have a great deal of furniture as collateral for a mere $300 loan. The hotel has nothing. They just believe I am honest.

"Hoping you will loan me $300 wired tomorrow and asking you please keep all I have said to you in confidence I am, your, grateful client."

Budget decided to accelerate the unpaid balance of its loan, repossess the security and foreclose the mortgage.

On November 7, 1951, Budget received a document from Paul Bessesen, the husband of the plaintiff, in his handwriting, which reads as follows:

"To Budget Finance Plan

"I do hereby direct the Budget Finance Plan to take possession of all furnishings, furniture and household effect located at 5959 Graciosa Los Angeles and sell said furnishings and apply net proceeds to the account of my wife Evelyn Bessesen also known as Evelyn MacNieven, who has mortgaged said furnishings to Budget Finance Plan as security for a

loan thereby made, since my wife has abandoned said furnishings and furniture by leaving the United States.

"Said property may be taken at any time after Nov. 7, 1951 by Budget Finance Plan or any agents thereof.

"Paul S. Bessesen"

On November 8, 1951, the articles of property, listed on an exhibit and constituting the bulk of the mortgaged property, were removed from the home of the plaintiff and her husband, and were stored at the Dorshkind warehouse, 1417 West Washington Boulevard, Los Angeles. Budget told plaintiff's husband at that time that the property was to be sold and told her son of the repossession. On November 8, 1951, Budget caused two duplicate forms of "Notice of Foreclosure" to be sent to the plaintiff; one was addressed to her at her home at 5959 Graciosa, Los Angeles, California, and was unclaimed up to November 23, 1951; the other was addressed to the plaintiff at Hotel Monte Cassino, Mexico City, D. F., Mexico, where she had written that she was staying, and was returned unclaimed from Mexico about December 18, 1951. The body of the notice in each instance was in substantially the following form:

"You are hereby notified that the undersigned has foreclosed under provisions of that certain Chattel Mortgage executed by you on the 3rd day of October, 1951, whereby you mortgaged to Budget Finance Plan certain personal property described as follows:

All furniture and furnishings listed on chattel mortgage HOX 8130, dated October 3, 1951

as security for the payment of indebtedness, and you are hereby further notified that the said property is now in possession of the undersigned and unless you pay, within five (5) days from the date hereof, to the undersigned, as holder and owner of the said Mortgage, at its office located at *6550 Sunset Blvd., Hollywood, California* the sum of $1011.70, all of which said sum is now due and payable pursuant to the conditions of said Mortgage, plus charges at the rate provided for in said Note secured by Chattel Mortgage, from date hereof to date of payment, the said property will thereafter be sold pursuant to terms of said Chattel Mortgage, and if said property sells for less than the amount then due under terms of the mortgage, you will be obligated to pay the deficiency.

"Sale will be held at Hollywood on the 14th day of November, 1951, at 9:00 o'clock A.M.

"Dated at Los Angeles, this 8th day of November, 1951

"BUDGET FINANCE PLAN

Mortgagee."

(Emphasis added.)

From some source the plaintiff learned of Budget's taking possession of the items mortgaged, for she wrote in a letter on the Hotel Monte Cassino stationery to Budget on November 9, 1951, in part as follows:

"Am glad to hear that you have taken all the furnishings to safety.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"I beg your cooperation in getting Paul Bessesen arrested. As you have a lien on my house-hold furnishings your attorney should have the authority to arrest him.

"In all probability he can be found at 2311 Dorothy St. in La Crescenta as he is 'thick as thieves with my homosexual son.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"If your attorney will save my home by the lespendence . . . then I can sell it at a decent price and pay my obligation to you in full.

"Please send me a night letter. It costs very little. I want to know how long you will give me to pay what I owe you."

On November 14, 1951, plaintiff sent from Mexico City, Mexico, a telegram to Budget, addressed to 6550 W. Sunset Boulevard, Hollywood, Calif., wherein she set forth, among other things, that Budget had removed the furnishings, and insisted upon a wire from Budget to her at the Monte Cassino hotel, assuring her of the safety of the furnishings and that Budget should "sell nothing settle obligation soon."

On November 14, 1951, a foreclosure sale was had by Budget, which was open to the public. Budget bid in all of the items for the amount then due, unpaid and owing to it in the sum of $1,179.21, subject to adjustment. Budget assigned the note and chattel mortgage to Dorshkind. Budget also sold to Dorshkind the property bought by Budget at the sale, for the price which Budget had bid, namely $1,179.21. Budget thereafter remitted its check for $146.85, representing the excess proceeds of the sale over plaintiff's debt to Dorshkind, and the check was then indorsed by Dorshkind to the order of plaintiff and she cashed the same.

In the ordinary course of business, Dorshkind thereafter arranged to auction off the property which he had purchased from Budget. The sale was set for November 20, 1951, and some of the furniture was sold on that date. At the request of plaintiff's attorney, the balance of the sale was postponed until November 27, 1951, on which date, after a number of items were sold, the sale was again postponed pursuant to the request of the plaintiff until December 4, 1951. On that date the remainder of the property was sold at public auction, excepting some items which were voluntarily delivered by Dorshkind to plaintiff's son for plaintiff. All of the sales were advertised and well attended. The total amount realized from such sales was $3,117.85, which was found by the court to be the fair market value of such personal property. After the sale Dorshkind delivered his check in the sum of $273.27 to the plaintiff, who then negotiated the check.

The chattel mortgage contained the following provisions with reference to the requirements respecting the sale and notice:

"Should Mortgagee or assigns take possession of said property, it may be sold at public or private sale, any time not less than five (5) days after notice is mailed by registered mail postage prepaid, to the last known address of mortgagor, advising him said property has been repossessed and will be sold at a time and place designated in said notice unless all sums then due are paid within said five (5) days period."

Appellant contends that (1) the sale of the property described in the chattel mortgage was not conducted in compliance with the terms of the mortgage, and that therefore Budget converted the property to itself and forfeited all lien rights thereon; (2) Dorshkind must also respond in damages because his position is no different than that of Budget, and (3) there is no evidence to sustain the findings of fact and conclusions of law upon which the judgment is based.

Considering the first contention to the effect that there was no lawful notice of the foreclosure sale: Two notices were mailed by registered mail on November 8, 1951, which time is not less than five days before the date of sale; the return envelopes show the notices were mailed by registered mail, postage prepaid; two notices were mailed, one to each of the last known addresses of the plaintiff—that is one to her home in Los Angeles, and one to her hotel in Mexico City, where she said she had been temporarily staying. Each notice set forth that the property "is now in the possession

of the undersigned," that is Budget, and that ". . . unless you pay within five days from the date hereof to the undersigned, as owner and holder of said Mortgage, at its office located at 6550 Sunset Blvd., Hollywood, California, the sum of $1011.70 . . . the said property will thereafter be sold pursuant to the terms of said Chattel Mortgage. . . ." The notice further set forth, "Sale will be held at Hollywood on the 14th day of November, 1951, at 9 :00 o'clock A. M., . . ."

It is to be noted that the particular address of Budget is set forth in full a few lines above that part of the notice which relates where and when the sale would take place, and we believe that in reading the notice as a whole, it is fair, upon any realistic approach to the matter, to say that plaintiff had notice of the time and place of the sale. Plaintiff had all of her transactions and dealings with Budget at the address set forth in the notice. It has been said, "Whilst the power must be strictly pursued, it is only necessary that it be fairly executed." (*Waite* v. *Dennison,* 51 Ill. 319, 322.)

It does not appear from anything produced by either side that the plaintiff was misled—nor that anyone was injured by what was contained in the notice. Had plaintiff thought that there was anything uncertain about the place of sale she could have learned just where it was to take place by simply inquiring. Instead, she only requested more money.

Furthermore, plaintiff never received either notice which was mailed to her, and it is difficult to ascertain how she suffered any damage from statements in the notices which she did not receive. The notices were properly addressed and mailed to her, and the responsibility of having the postal authorities make the delivery thereof to her should be hers and not the defendants'. The notations on the one envelope show that the postman made several efforts to deliver the letter to her home in Hollywood, and this despite the fact that her husband had lived there up to the day the notice was sent, and that her son had visited there after the furniture had been repossessed. The envelope addressed to the plaintiff in Mexico City shows that she had not claimed the same at her hotel, although it had been there for a substantial time before being returned. (See *Waite* v. *Dennison, supra,* 51 Ill. 319; *Manwaring* v. *Jenison,* 61 Mich. 117 [27 N.W. 899] ; Jones, Chattel Mortgages, 2795; *Davenport* v. *San Antonio Machine & Supply Co.* (Tex.Civ.App.), 59 S.W.2d 207.)

Appellant has cited three cases to sustain her position as

to the first contention, namely *Hartley* v. *Croze*, 38 Minn. 325 [37 N.W. 499], *Blodgett* v. *Hitt*, 29 Wis. 169 and *Hellman* v. *Merz*, 112 Cal. 661 [44 P. 1079]. All three cases deal with probate sales and simply enunciate the rule that proceedings for the sale of real property of a decedent are statutory, and that such sales will be void unless the requirements of the statute are complied with, which is not the problem in the instant case.

Appellant also cites *Wade* v. *Markwell & Co.*, 118 Cal.App. 2d 410 [258 P.2d 497, 37 A.L.R.2d 1363]. However, the facts of that case are not at all similar to the facts in the present case. In the Wade case it was proved, and the court found, that there was a gross inadequacy of price in relation to the actual value of the property sold, that the mortgagee had taken undue advantage of the mortgagor, and was guilty of unfairness resulting in gross inadequacy of price.

As said in *Winbigler* v. *Sherman*, 175 Cal. 270, at pages 275-276 [165 P. 943], after approving the rule as set forth in *Odell* v. *Cox*, 151 Cal. 70, 73 [90 P. 194] : ''Several authorities were cited in support of this statement, including the case of *Schroeder* v. *Young*, 161 U.S. 334 [16 S.Ct. 512, 40 L.Ed. 721], in which the court, after saying that courts are not slow to seize upon other circumstances impeaching the fairness of the transaction as a cause of vacating it, especially if the inadequacy be so gross as to shock the conscience, said : 'If the sale has been attended by any irregularity . . . , if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or if the sale has been collusively or in any other manner conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner may be permitted to redeem.' This court said : 'We think there can be no doubt under the authorities that where, in addition to gross inadequacy of price, the purchaser has, in the language of the United States supreme court, ''been guilty of any unfairness or has taken any undue advantage'' resulting in such gross inadequacy and consequent injury to the owner of the property, he will be deemed guilty of fraud warranting the interposition of a court of equity in favor of the owner who is himself without fault.' ''

There was no showing in the instant case, and the court did not find, that Budget was guilty of unfairness to the plaintiff or had taken advantage of her, nor was it found that

the price received from the sale of the property in question was grossly disproportionate to the value of the property. ▉ Fraud and wrongdoing are never presumed. It is presumed that private transactions have been fair and regular. (Code Civ. Proc., § 1963, subd. 19.)

▉ Furthermore in the case at hand, plaintiff acquiesced in the foreclosure proceedings and she accepted benefits therefrom. It would seem therefore that she ought now to be precluded from asserting that the proceedings were erroneous. Among other things, she accepted and cashed Budget's check representing certain excess monies from the sale over and above her indebtedness; she accepted and negotiated Dorshkind's check secured from a portion of sales of the property; she had her son purchase certain items of furniture for her at the sale, and the son told Dorshkind that the rest of the furniture was junk; she, through her counsel, requested and obtained the postponement of two auction sales. She never questioned the validity of the foreclosure sales until long after the same had been completed.

▉▉ It is appropriately said in 21 California Jurisprudence 372-373, Pledges, section 71, as follows:

"A sale by a pledgee in contravention of the provisions of the law, may be ratified by the pledgor, either expressly or by implication. . . . A pledgor is deemed to have ratified a sale or to have elected to treat a sale as valid, where, without objection, he admits the correctness of an account showing a credit for the amount of the sale, or where, without objection and with knowledge of his rights, he commences to treat with the pledgee purchaser with a view to acquiring the property, or where he does not object within a reasonable time after having been informed of the facts. . . . At any rate, a pledgor's silence and acquiescence at the time of the sale and unexplained delay in making objection thereto, and his conduct thereafter in accepting compensation for effecting the sale and delivery to the purchaser, if not technically a ratification, operate as an estoppel to dispute the validity of the sale."

And in 14 Corpus Juris Secundum 1048, Chattel Mortgages, section 397, the rule is stated as follows:

"If the mortgagor knowingly consents to, participates in, or ratifies a wrongful sale of the mortgaged property, as where he purchases from the mortgagee a part of the chattels, which the latter had bought at the sale, or accepts from the mortgagee a voluntary payment of the difference between

the amount of the debt and what the mortgagee realized from the chattels purchased at the sale, all irregularities are waived and the sale is equivalent to a foreclosure in proper form.'' (See also *Hill* v. *Finigan,* 77 Cal. 267 [19 P. 494, 11 Am.St.Rep. 279] ; *McConnell* v. *People,* 71 Ill. 481.)

Appellant's third contention is that there is no evidence to support the findings of fact and conclusions of law upon which the judgment is based. It is true that the evidence upon which the important findings are based was conflicting evidence, but that is not at all unusual. The judge simply believed the witnesses of the defendants and disbelieved the plaintiff and her witnesses. The plaintiff herself, some months afterward, when she was attempting to seek a delay in the proceedings to the end that she could secure the services of attorneys after having already had three sets of attorneys, seemed to believe that her son was guilty of perjury.

In *Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, at pages 507-508 [289 P.2d 476, 47 A.L.R.2d 1349], it is set forth:

'' 'An appellate court will not disturb the implied findings of fact made by a trial court in support of an order, any more than it will interfere with express findings upon which a final judgment is predicated. When the evidence is conflicting, it will be presumed that the court found every fact necessary to support its order that the evidence would justify. So far as it has passed on the weight of evidence or the credibility of witnesses, its implied findings are conclusive. This rule is equally applicable whether the evidence is oral or documentary. In the consideration of an order made on affidavits involving the decision of a question of fact, the appellate court is bound by the same rule as where oral testimony is presented for review.' (Citing authorities and cases.) When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed. (*Hayutin* v. *Rudnick,* 115 Cal.App.2d 138, 140 [251 P.2d 707]. . . .)''

In *Kuchera* v. *Kuchera,* 128 Cal.App.2d 435, at page 440 [275 P.2d 610], it is stated: '' 'When an issue of fact has been submitted to a trial court upon affidavits, and an appeal

has been taken from the order therein, an appellate court is governed by the same rule that applies when such an issue has been submitted upon oral testimony, and if there is a substantial conflict in material statements in the affidavits the determination of the factual issues by the trial court is conclusive on appeal.' (*Small* v. *Small*, 123 Cal.App.2d 870, 874 [268 P.2d 63]. . . .)''

In our opinion there was sufficient evidence in the record to sustain each and every finding of fact made by the court, and the findings support the judgment.

In the light of the foregoing, we are of the belief that there is no merit to appellant's second contention, namely that Dorshkind should respond in damages.

Judgment affirmed.

White, P. J., and Drapeau, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 13, 1958.

*Assigned by Chairman of Judicial Council.