[905 NYS2d 901]

JOHN DOE, Plaintiff, v JANE DOE, Defendant.

Supreme Court, Queens County, August 9, 2010

**APPEARANCES OF COUNSEL**

*Armand Fried*, Flushing (*Kevin Costello* of counsel), for plaintiff.

**OPINION OF THE COURT**

CHARLES J. MARKEY, J.

This motion by the plaintiff raises the novel issue, apparently of first impression to the best of this court's legal research, of whether a court should vacate a final decree of divorce solely on the grounds that the parties have allegedly reconciled or are in the process of attempting a reconciliation. The famous writer Cervantes (1547-1616), known fully as Miguel de Cervantes Saavedra, author of the famous Don Quixote, once stated: "The worst reconciliation is better than the best divorce." On the issue before the court, the court must weigh any potential benefit to the goal of reconciliation by allowing a vacatur of a final judgment of divorce or to deny the motion on the grounds of finality and to deter parties from acting whimsically in filing for divorce and then seeking vacatur.

In order to avoid unnecessary embarrassment to the parties, the court has concealed their names in this version of the opinion submitted for publication, referring to the husband and wife as John Doe and Jane Doe and hiding the correct index number.

As an initial matter, the motion papers by plaintiff (former) husband John Doe are flawed in two respects. First, the wrong address was placed for the Long Island City courthouse in Queens County in which the undersigned presides. The court overlooks this error since the defendant (former) wife joins in the plaintiff husband's motion to vacate the final decree of divorce. Second, plaintiff's counsel failed to append the decree of divorce as an exhibit in his motion seeking vacatur. It follows, like night after day, that when a party seeks to vacate an order or judgment, the order or judgment is an indispensable exhibit. Here, counsel forced the court to go to the effort of procuring the pertinent missing documents from the Matrimonial Clerk's Office.

The parties were married in the Commonwealth of Rhode Island in 2005. There are no children of the marriage. During 2009, the husband filed for divorce on the grounds of abandonment, contending that the defendant wife left the marital home in Queens County, New York, and returned to Rhode Island. The undersigned signed a judgment of divorce on November 2, 2009, that was entered by the Clerk of the Court on December 16, 2009. The court granted the divorce on the grounds of the wife's physical abandonment of the plaintiff, pursuant to Domestic Relations Law § 170 (2).

Although the notice of motion seeking a vacatur of the final judgment of divorce was undated, it was served by plaintiff's counsel on June 10, 2010. The affidavits of the plaintiff and the defendant that were included in the motion were signed in late April 2010. The motion was filed on June 18, 2010 and was argued before the undersigned on July 19, 2010. The parties thus waited many months after the signing and entry of the final decree of divorce before seeking the relief of vacatur and provide no explanation for the delay.

Plaintiff's counsel, Armand Fried, Esq., contends in his supporting affirmation that both parties join in the request to vacate the final decree of divorce "without prejudice." He contends:

> "I have tried to accomplish the desired result by Stipulation pursuant to CPLR Rule 5015 (b), although admittedly this is not a default judgment. I have done this in the past in New York County, and the Clerk's office there accepted this procedure. However, I was advised that the Queens County Clerk's office would not accept such a Stipulation, and this Motion became necessary."

Concerning Mr. Fried's contention, the court makes clear that once the Office of the County Clerk of Queens County has received a final judgment of divorce, it enters that judgment. So, assuming that plaintiff's counsel presented a stipulation signed by both parties agreeing to vacate the final judgment, both the County Clerk and the Matrimonial Clerk were powerless to accept such a stipulation since that judgment had been entered by the County Clerk. The Office of the County Clerk would not have been able to vacate an order or judgment, even upon stipulation, absent a court order.

Putting aside whether or not Mr. Fried's allegations concerning the alleged practice in New York County of vacating final judgments are accurate—and the court expresses doubt on the accuracy of such representations—his request, in the present case, that the court vacate the final judgment of divorce "without prejudice" is open to mischief and abuse. In obtaining a final judgment of divorce, the parties set in motion the machinery of the State's judiciary and both parties collaborated in procuring an uncontested divorce. The defendant herself appeared in the matrimonial action and expressly waived her right to answer. Now, after the court has exercised its time and effort, the couple seeks vacatur, several months after the entry of judgment, claiming that they have "reconciled" their differences.

Even that claim of reconciliation does not appear genuine or fully mature. In affidavits filed in April 2010, without any update at the time of the oral argument in July 2010, the couple states that they are still living separately. They state that they are still not living together again and trying to work out whether defendant will return to Queens County or whether the plaintiff will move to Rhode Island. In effect, it appears that their alleged reconciliation is really premature under these circumstances.

The parties set in motion the machinery of a matrimonial action. They got what they wanted—an uncontested, final judgment of divorce. Now, because of some urge or general feeling of reconciliation, they seek a vacatur of the final judgment of divorce, but want it "without prejudice." The fact that the joint request for vacatur of the judgment of divorce is made "without prejudice" underscores how dangerous it would be to turn the control of the court's calendar to the whims and caprices of the litigating parties.

Courts, however, are engaged in the serious business of dispensing justice and upholding principles of finality. One can imagine the discredit that would be earned by the court if it were to grant the motion and allow a vacatur only to be asked later by the parties, who would not be able to conclude where they should live, to vacate the vacatur, under the same index number, because it was made "without prejudice."

The plaintiff states in his affidavit that he and his former wife "both regret the decision to ever get divorced and would much prefer wiping out this sad chapter of our lives. If we simply got remarried, we would forever be aware that a divorce judgment still exists between us." Contrary to plaintiff's arguments, a remarriage would be cleansing of the past and would permit vows to be taken with new hope and conviction for a better tomorrow.

At oral argument, Kevin Costello, Esq., of plaintiff's counsel, urged, without any factual support in the parties' written submissions or any elaboration, that the parties sought to avoid religious stigma in their communities that allegedly attaches to divorce. If that contention is the case, they should have considered alleged religious, community, and cultural opprobrium before they both consented to an uncontested civil divorce. At any rate, the court does not bow to alleged religious sentiments or convictions that may attach to divorce. Civic marriage and divorce should not be entangled with religious mar-

riage and divorce. Preventing embarrassment to former litigants, moreover, is not a worthy allocation of judicial resources.

Turning to the law, the motion is unsupported by any citation of law. At oral argument, plaintiff's counsel stated that he could find no authority to support his request. In his papers, as stated, the only support is his bare, conclusory, and unsupported contention that in New York County, the Clerk allegedly allows stipulations that vacate final judgments of divorce.

The starting point in the legal discussion is CPLR 5015, setting forth the types of cases where a court can relieve litigants of an order or judgment. None of the provisions of CPLR 5015 applies in the present case. CPLR 5015 (a) allows for vacatur of an order of judgment in the event of fraud or mistake. The defendant in the case at bar, however, is not contending fraud or mistake in the procuring of the divorce. (*See e.g. Kuchera v Kuchera*, 128 Cal App 2d 435, 275 P2d 610 [1954].) She accepted the service of process, appeared in the action, and waived service of the answer. Here, the parties apparently reconciled after the judgment was entered, so there was no mistake at the time the judgment was entered. CPLR 5015 is thus inapplicable. In the absence of any provision in CPLR 5015 to allow for vacatur of a judgment of divorce based solely on a reconciliation, this court will not grant the relief. The absence of such a provision from CPLR 5015 permitting a vacatur of a final judgment of divorce solely on grounds of reconciliation that allegedly occurred months after the final judgment was entered by the Office of the County Clerk indicates that the Legislature would frown upon a vacatur of a final divorce judgment based solely on the parties' whims.

This court's independent legal research, however, uncovered one case that might, at first blush, support plaintiff's contention. In *Armstrong v Armstrong* (176 Misc 240 [Sup Ct, Nassau County 1941]), the court denied the motion of a wife to vacate an interlocutory judgment of divorce in her favor and to file an amended complaint, praying for a separation. The court observed that the wife was not seeking to vacate the interlocutory decree so that she might attempt to effect a reconciliation with her husband, but, instead, sought the decree of separation for the avowed purpose of preventing the husband's marriage with the corespondent. In obiter dicta, the court in *Armstrong* stated:

> "It seems apparent that where a wife seeks to discontinue a marital action, even after final decree,

as in the latter case, if she is acting in good faith and is genuinely seeking a reconciliation with her spouse, the courts are inclined to favor her petition. The policy of the court is to encourage reconciliations and thus support, strengthen and sustain American family life, in which divorce with its attendant sorrows and evils, is all too frequent. And, of course, in many instances the granting of such relief terminates the litigation." (*Id.* at 242; *accord Viscomi v McGuire*, 169 Misc 2d 713, 718 [Sup Ct, Westchester County 1996] [within context of deciding whether to permit disinterment of deceased wife's remains and reburial in another plot, court observed that "reconciliation (of matrimonial disputes is) a policy much favored in law"].)

Despite the eloquent language of Justice Hooley in *Armstrong*, quoted above (176 Misc at 242), that case *is* inapposite. First, the sentence that follows the quoted passage in the *Armstrong* opinion makes clear that the cases where courts have allowed vacatur are from an interlocutory decree of divorce. In *Armstrong*, the parties were not seeking vacatur of any decree of divorce in order to produce a happy reconciliation. As the court in *Armstrong* noted, the wife desired to replace an interlocutory—not a final—decree of divorce with a separation, born out of a feeling of hostility, to try to separate her former spouse from his lover and to vex, annoy, and harass them. The court in *Armstrong* saw through the wife's tactics and denied her motion to vacate the interlocutory decree of divorce and permit her to file an amended complaint for separation. Thus the language of Justice Hooley in *Armstrong* that courts will allow a vacatur of a final decree of divorce in order to effect a reconciliation is simply obiter dicta.

Second, Justice Hooley's quoted statement finds no support in case law despite the court's comment in that case that "courts are inclined to favor [the] petition" to vacate a final judgment of divorce. This court has not found any case in any jurisdiction to support Justice Hooley's sweeping statement in *Armstrong* that courts will vacate final decrees of divorce to effect or promote a reconciliation. Even if there were such cases to support the sweeping proposition, and this court has found none, it would be ludicrous if the vacatur of the final decree of divorce were made "without prejudice," thereby conceivably allowing the parties, under the same index number, to vacate the vacatur and reinsert the divorce decree, if their attempted reconciliation failed.

The court in *Armstrong* cites an Appellate Division case, *Kenner v Kenner* (240 App Div 713 [2d Dept 1933]), that is inapposite. *Kenner* deals only with interlocutory decrees of divorce. In this regard, see *Zuckerman v Zuckerman* (105 AD2d 782 [2d Dept 1984]) and Annotation, *Right of One Spouse, over Objection, to Voluntarily Dismiss Claim for Divorce, Annulment, or Similar Marital Relief* (16 ALR3d 283 [1967]). The decision in *Zuckerman* and the ALR Annotation make clear that courts have contemplated vacating or dismissing matrimonial actions in the context of *interlocutory*—not final—decrees of divorce, and the courts have been forced to decide whether to allow vacatur or dismissal of an action over the objection of one of the litigants to the matrimonial action, usually prompted by spite, as shown in the facts of *Armstrong*, or for economic advantage. (*See* Pamela Paul, *The Un-Divorced*, New York Times, July 30, 2010 [regarding the many reasons, including economic, why couples remain separated, instead of obtaining a divorce].)

Third, New York is the last state in the nation to have rigid codes governing divorce. New York's Legislature for decades stubbornly resisted the trend to allow no-fault divorces. Even that opposition is soon coming to an end. (*See* Nicholas Confessore and Anemona Hartocollis, *Albany Approves No-Fault Divorce and Domestic Workers' Rights*, New York Times, July 1, 2010 ["Lawmakers on Thursday crossed two historic thresholds governing the realm of the home, making New York the first state to grant workplace rights to domestic employees and the last to allow some version of no-fault divorce"].)

Justice Hooley's comments in *Armstrong* quoted above, in short, constitute obiter dicta and are without legal support. The comments were written at a time where courts expressed strong opposition to divorce, mandated the showing of fault, sought to preserve the sanctity of marriage and to "support, strengthen and sustain American family life." (*Armstrong*, 176 Misc at 242.)

The court thus congratulates the plaintiff and the defendant on their professed reconciliation, but reminds them that the role of the court ended last year when it issued a final decree of divorce. The remedy for these former litigants is to make new vows and a fresh start by remarrying, in their discretion.